96 So.2d 257

Charles L. DUNN

v.

Richard M. FLETCHER et al.

6 Div. 835.

Supreme Court of Alabama.

June 20, 1957.

274

Ingram Beasley, Birmingham, for appellant.

Robt. S. Glasgow, Jr., Adamsville, for appellees.

COLEMAN, Justice.

Appellant and appellees are next door neighbors in Pratt City, Alabama, where they have lived side by side since 1935.

On December 22, 1953, appellant filed his bill of complaint alleging that he resides at 309, and that appellees reside at 311, both on Third Street. The lot of each party fronts on Avenue U (Third Street?) about 37 feet and runs back from the street eastwardly about 181 feet to an alley. The lot of appellant lies on the north of appellees' lot on the south. The south line of appellant's lot, which is the north line of appellees' lot, is the line in dispute.

The bill of complaint further alleges that appellees, in 1950, erected, on the east or rear portion of appellees' lot, a one-story concrete block dwelling, and that part of said building extends over approximately two feet onto appellant's lot, and that appel-

lees have refused to remove the building. The bill prays for a mandatory injunction requiring appellees to remove the building off appellant's property and that the court will establish the boundary line, and for general relief.

Appellees' answer denies the encroachment and alleges adverse possession, and also that appellant recognized the boundary as now existing and pointed out the same to appellees before the erection of the concrete block building by appellees.

The evidence was taken ore tenus before the trial judge. The record shows that the trial judge stated the contention of the parties before testimony was taken as follows:

"The Court: No, as I understand it you both agree that the true boundary as shown by the survey is not the boundary claimed by your clients?

"Mr. Glasgow: Yes, sir.

"The Court: In other words, you claim either by adverse possession or so far as an agreed boundary line and so on, that the building is over the line. It is agreed upon?

"Mr. Glasgow: Yes, sir.

"The Court: And that the complainant agreed to the boundary when he assisted the respondent in locating this building on the property on which it is?

"Mr. Beasley: Of course that is their contention and of course we deny that.

"The Court: Yes, sir."
The evidence is in direct and irreconcilable conflict.

Appellees' evidence tended to show that in 1935 the disputed boundary line was marked by hedges and fences. Appellant's evidence contradicts this. Conflicts also appear in the evidence as to the existence and location of a driveway between the houses of the parties.

Appellee, Richard M. Fletcher, and one other witness testified that prior to commencing the erection of appellees' concrete block building which was completed in July 1949, appellee, Richard M. Fletcher, and the witness, Baker, who built the concrete block building, had a conference with the appellant on the ground where the building was to be erected; that on this occasion the appellant pointed out stakes at each end of the disputed line. We quote from the testimony of the carpenter, Baker:

"Q. Just tell the court what happened, then, if you don't mind? A. Well, you see, before we would go to laying out a foundation for a house, you have got to have a starting point. And Mr. Fletcher and Mr. Dunn found their stakes. And I taken over from their stakes and laid out a foundation for the house.

"Q. Mr. Dunn helped Mr. Fletcher locate the house? A. Yes, sir. They located the stobs and Mr. Dunn told Mr. Fletcher it was O. K. to go ahead after they agreed it was on their property line.

"Q. They were—A. They measured both property, from stake to stake.

"Q. And it was agreeable to Mr. Dunn? A. Yes, sir.

"Q. And Mr. Dunn told Mr. Fletcher to go ahead and build it? A. Yes, sir.

"Q. Now, did you build that house within the lines Mr. Dunn said for the property of Mr. Fletcher's? A. Yes, sir.

\*   \*   \*   \*   \*   \*

"Q. Did you run a cord then from the front of the lots to the back? A. I did."

We quote also from the testimony of Richard M. Fletcher:

"Q. Mr. Fletcher, I believe that you said that Mr. Dunn helped you

measure for the foundation of this building you built before you built it? A. Yes, sir. I had to get—the Inspector wanted me to get so many feet from the line, and I did not know where the stob was, and Mr. Dunn had a Survey, so he told me, and we dug down and found the stobs. And we measured from one side of this property to my corner, and then measured from there to put the house down, and the man could dig the foundation so that the inspector could see that it was all right.

"Q. Were you measuring out there with Mr. Dunn's Assistance; he advised you it was on his property? A. Yes, sir.

"Q. And you had been taking down to the fence line all the time? A. Yes, sir, his stob was on the old fence line where he had it."

Appellee, Richard M. Fletcher, further testified that appellant assisted on this occasion in the measuring as follows:

"Q. Do you say that he helped you do some measuring, or what did he do? A. He went and held part of the tape to measure from his stob so many feet over to put a foundation for the little house, sir."

Appellant flatly denied that he had ever shown Fletcher or Baker any stakes, or that he had assisted in measuring the disputed line.

Appellant, when asked whether he had done anything to stop the erection of the concrete block house, testified as follows:

"The Court: When you saw that house going up what did you do to stop Mr. Fletcher from building it?

"The Witness: Well, I didn't do anything.

"The Court: You saw it as it was being built here at the time?

"The Witness: Yes, sir.

"The Court: And that was about five years ago?

"The Witness: Yes, sir."

Appellant testified that about 1939 he set out a hedge in the center of the old driveway, and about that time built a low concrete wall on the front or west line of his lot. The wall appears to be about seven inches high. The south end of this wall appears to be located approximately two feet north of the line claimed by appellant.

Some time later, appellees built a low brick wall about ten inches high on the front or west line of their lot. The north end of appellees' brick wall lies about three inches south of appellant's low concrete wall above mentioned.

The decree of the trial court established the boundary line to "Begin at a point equal distant between the abutting ends of the walls in front of the respective properties."

In 1948, appellant built a concrete block wall about 15 to 20 inches high, running east and west, and on top of this concrete block wall erected a wire fence. This wall appears to lie about two feet north of the line claimed by appellant, and extends a distance of perhaps 40 feet along or near the middle of the disputed boundary line. Appellant testified that this wall was built to enclose a rose garden and not to establish a boundary line. The trial court established the boundary line along the south side of this wall.

Appellant also built a retaining wall on the east side of his lot. The south end of this retaining wall also stopped some two feet north of appellant's south boundary line as contended for by the appellant.

The dimensions of these several walls are not stated precisely in the testimony, but pictures thereof appear as exhibits in the record, and the dimensions stated in this opinion are those that appear to the writer to be approximately correct according to the record filed here.

The decree appealed from recited that the boundary line between the property of the parties "had been agreed to by and between the parties" and described the boundary line, appointed a surveyor to establish said line in accordance with the decree, and taxed the costs one-half against each party.

A map or plat made by the appointed surveyor as ordered by the final decree was filed in the court below and appears in the record.

The record shows that appellees' concrete block house occupies a portion of appellant's lot as the south line of that lot is determined by the description in the deeds of the parties. Appellant argues the proposition that in order for appellees to acquire title to that portion of appellant's lot on which appellees' building stands, appellees must prove possession for the full ten-year period. Appellant further says that appellees have failed to carry the burden of proving adverse possession for ten years, and, therefore, appellees cannot succeed in this suit and the decree establishing the disputed line is erroneous.

While the proposition asserted by appellant is correct, we do not think it applies in this case. The trial court did not rest its decree on adverse possession, but instead found that the line had been agreed on by the parties and established the line on the basis of that agreement.

This decision does not rest on adverse possession. We think the doctrine of estoppel in pais applies.

"Estoppels in pais cannot affect the title to land in a court of law. * * *

"In courts of equity a different rule prevails. 5 Michie, Dig. 704, § 73." Earnest v. Fite, 211 Ala. 363, 366, 100 So. 637, 639, 640.

That doctrine has been stated by this court as follows:

"Representations, or admissions, which have been acted on by others, especially when made in answer to inquiries for information on which to base action, and when the purpose of the inquiry is made known, become conclusive, and operate as an estoppel on the party making them, in all cases between him and the person whose conduct he has influenced, if loss must ensue from a denial of their truth.—1 Brick.Dig. 296, §§ 10, et seq. The representations or admissions may have been made innocently, and inadvertently; but they will become conclusive, if the party to whom they are made is induced to act upon them, and must sustain injury because of such action, unless they are allowed all the operation they could have if true in point of fact, and made deliberately. * * *.

"* * * Resting in parol, at law the estoppel was not available to the appellee; but in a court of equity it has full operation. * * *." Hendricks v. Kelly, 64 Ala. 388, 391, 392. See, also:

"* * * The contrary doctrine is so well settled in this state that, notwithstanding the requirements of the statute of frauds, declaring void certain contracts for the sale of land, unless evidenced by writing subscribed by the party to be charged, an equitable interest may be acquired in lands, without any written transfer of title, by conduct or declaration of the owner, which would create an estoppel *in pais* on his part. * * *" Alabama Gt. Southern R. Co. v. South & North Ala. R. Co., 84 Ala. 570, 578, 3 So. 286, 289.

The following statements of this court on estoppel were collected and set out in Burleson v. Mays, infra:

"The following equitable principles and maxims, often reiterated by this and other courts, find fit application to the case made by this record: 'The doctrine of estoppel is founded upon the primary and ultimate aims of the

law—the redress of wrong, the prevention of fraud, and the promotion of the ends of justice. Having its origin in good morals and in consideration of good faith, its operation and effect are useful and beneficent, when its application is confined to cases, where it is manifest that the acts or statements on which another has relied and acted cannot be retracted "without a breach of faith on the one hand, and injury on the other." The underlying principle is that declarations or admissions, express or implied, made for the purpose of influencing the conduct of another, if the designed effect ensues, are conclusive upon the party making them. What one person has induced another to believe and act on to his detriment will, as between them, be regarded as true. But an estoppel, being in its nature defensive, will not be used to effectuate a gain, and will not be enforced, further than is requisite to protection from injury. 2 Smith's Lead Cases, 858 to 865.' Adler v. Pin, 80 Ala. 351, 354.

" 'It is a sound and honest rule of equity, supported by principles of justice as well as of public policy, that if one knowingly though passively, suffers another to purchase and spend money on land, under circumstances which induce an erroneous opinion or mistaken belief of title, without making known his claim, he shall not afterwards, in a court of conscience at least, be permitted to successfully assert any right or title against the purchaser. Hatch v. Kimball, 16 Me. 146; Marshall v. Pierce, 12 N.H. [127] 136; Wendell's Ex'rs v. Van Rensselaer, 1 Johns.Ch. [N.Y.] [344] 354; Blake's Lessee v. Davis, 20 Ohio. 231.' Alabama Gt. Southern R. Co. v. South & North Ala. R. Co., 84 Ala. 570, 580, 3 So. 286, 290 [5 Am.St.Rep. 401].

" 'It is a just and well-recognized principle, that "He who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to keep silent," and again, "When a party negligently and culpably stands by and allows another to contract on the faith of an understanding which he can contradict, he is afterwards estopped from disputing the facts in an action against the person whom he has assisted in deceiving, upon the principle that 'Between innocent parties, he who causes the injury must suffer.' " 2 Her. on Est., Secs. 937, 938.' Harris v. American Building & Loan Ass'n, 122 Ala. 545, 554, 25 So. 200, 202.

" '* * * 2 Herman on Estoppel, § 934; Hendricks v. Kelly, 64 Ala. [388] 391; Nelson v. Kelly, 91 Ala. 569, 8 So. 690; McCravey v. Remson, 19 Ala. 430 [54 Am.Dec. 194]; 7 Am. & Eng.Ency.Law, 18; 4 Am. & Eng. Dec., in Equity, 258.' Fields v. Killion, 129 Ala. 373, 376, 29 So. 797, 798." Burleson v. Mays, 189 Ala. 107, 115, 116, 117, 66 So. 36, 39, 40.

That doctrine has been applied by this court in Hendrix v. Southern Railway Co., 130 Ala. 205, 30 So. 596. Headnote 1 in that case recites as follows:

"When the owner of land has knowledge of the fact that a railroad is proceeding to construct its road on his land, and allows it to expend large sums of money for this purpose, and for subsequent improvements upon said roadbed and right of way, without interfering or forbidding the company to proceed, such owner is estopped from evicting the railroad company by action of ejectment."

Also, in Thompson v. Page, 255 Ala. 29, 34, 49 So.2d 910, 914, in 1951, this court said:

"It is alleged in effect that in 1945 and 1946 Hugh F. Thompson stood by and saw John C. Page erect valuable improvements on the lot sued for and by silence acquiesced in the making of valuable improvements on the lot by

John C. Page, knowing all the time that John C. Page was acting under the assumption that he himself had title and that appellant had no interest in the parcel of land sued for. *If true, this situation works an estoppel against Hugh F. Thompson.* Alabama Great Southern R. Co. v. South & North Ala. R. Co., 84 Ala. 570, 3 So. 286; South & N. Ala. R. Co. v. Alabama G. S. R. R. Co., 147 Ala. 702, 41 So. 307; Hendrix v. Southern Railway Co., 130 Ala. 205, 30 So. 596, 89 Am.St.Rep. 27; Ivy v. Hood, 202 Ala. 121, 79 So. 587; Earnest v. Fite, supra. 'Every additional brick added to the structure was an argument against the defendant's silence [and each stroke of the carpenter's hammer] a voice commanding him to speak.' Forney v. Calhoun County, 86 Ala. 463, 5 So. 750, 752." (Emphasis supplied.)

While possession for less than ten years may not confer title at law, where an owner of land has affirmatively represented the location of his boundary line to his neighbor and failed to object when the neighbor erected a building in reliance on such representation, the owner of the land encroached on will not, in equity, afterward be heard to say that his representation as to the location of the line is untrue.

In the instant case, appellant by his own admission saw appellees erecting the building, but did nothing. If the testimony of Richard M. Fletcher and Baker is believed, the appellant in this case did not merely stand by in silence, but actively participated in the location of the boundary line on which the appellees rely; wherefore, the appellant will not be permitted in this suit to oust the appellees on the strength of appellant's legal title.

We have carefully considered the entire record and exhibits, and also, the authorities relied on by appellant. The disputed issues were questions of fact. There was ample evidence to support the finding of the trial judge who heard the evidence ore tenus. We cannot say that the decree is unsupported by the evidence or so palpably wrong or manifestly unjust that we can reverse it. Christian v. Reed, 265 Ala. 533, 92 So.2d 881; Holoway v. Carter, 261 Ala. 51, 72 So.2d 728; 2 Ala. Dig., Appeal and Error, ☞ 1009(1).

Appellant further assigns as error that the decree is vague and indefinite in that the boundary line as described therein is incapable of being located.

We are of opinion that the decree is sufficiently definite to enable a surveyor and the sheriff to locate the line on the ground in accordance with the decree.

The decree appealed from is due to be and is affirmed.

Affirmed.

All the Justices concur except STAKELY, J., not sitting.