CARROLL, CHAS., Chief Judge.
This appeal, from an order dismissing the appellant’s equity suit, presents for determination the question of whether the complaint stated a cause of action.
Appellant had purchased the property involved here from Grier Enterprises, Inc., during the pendency of a suit against the latter by Charles B. Tutan as executor of the estate of Lorna Higgins, which suit resulted in a decree holding that the estate was the owner. Appellant brought this suit to avoid the effect of that decree, and to have herself declared to be the owner and to quiet her title.
The complaint and its exhibits disclosed the following facts: One Lorna Higgins, prior to her death which occurred in 1956, conveyed certain improved real estate, on which she resided, to Grier Enterprises, Inc., a corporation owned and controlled by one John T. Grier, with whom she had considerable dealings. Later, in a suit brought by Charles B. Tutan as her executor, it was found that the Grier corporation had held as trustee for Lorna Higgins. The property was subject to a first mortgage in the principal amount of *44 $8,500 held by Coral Gables Federal Savings & Loan Association.
Lorna Higgins died April 24, 1956, leaving a will under the terms of which Charles B. Tutan was named as the sole beneficiary and executor. On the day Mrs. Higgins died, the Grier corporation made a second mortgage on the property in question, in the amount of $4,000, to Tutan in his individual capacity. In due course the Higgins will was probated and Tutan qualified as executor August 10, 1956.
On October 23, 1956, Tutan, as executor, filed the suit against Grier and the Grier corporation, claiming that the Grier corporation had held the property as trustee for Lorna Higgins, and seeking recovery of the property and an accounting. A lis pendens was filed in connection with that suit. A motion of the defendants to dismiss was filed and remained pending and undisposed of until December of 1957.
During that period, the appellant, acting through an agent, entered into negotiations with Grier and Tutan to buy the property. She did that without knowledge on her part, or on the part of her agent, of the existence and pendency of the suit by Tutan against Grier by which Tutan, as executor, was seeking to force a re-conveyance of the property to him from the Grier corporation. Appellant acquired the property subject to the first mortgage of $8,500. As a part of the transaction, which took place in March of 1957, Tutan accepted $3,300 for his $4,000 second mortgage, and appellant paid' Grier $700 over the amount of the first mortgage. Appellant took possession and proceeded to pay the monthly first mortgage payments.
Tutan obtained a decree in his suit against Grier on April 28, 1958, holding that the Grier corporation held the property as trustee, and ordering the Grier corporation to reconvey the property to Tutan as executor of the estate of Lorna Higgins. Thereafter, on May 7, 1958, appellant first learned of the Tutan claim, on receipt of a letter from the attorneys for the executor, in which they took the position that the Higgins estate was the owner of the property and that appellant’s purchase thereof, made during the Tutan-Grier suit, was ineffectual because of the lis pendens in that suit.[1] The complaint included the following allegations:
“e. Thereafter, while said [Tutan-Grier] suit was pending, but without plain *45 tiff having any knowledge of the pendency of said suit or of the claims asserted therein, plaintiff negotiated with the defendant Grier Enterprises, Inc., through her agent Walter A. West, Jr., for the purchase of said property, and on or about March 1, 1957 Grier Enterprises, Inc. agreed to sell said property to plaintiff subject to the first mortgage described in paragraph 3 above, provided plaintiff paid Grier Enterprises, Inc. $700.00 for its equity in said property over and above said first mortgage and provided plaintiff paid and satisfied the second mortgage, mentioned above, which was being held by Stanley P. Nitsche in trust for the defendant Charles B. Tutan. After reaching said agreement with Grier Enterprises, Inc., plaintiff, through her agent Walter A. West, Jr., negotiated with the said Charles B. Tutan to determine how much he would accept in full payment of said second mortgage if plaintiff purchased said property from Grier Enterprises, Inc., and on or about March 9, 1957 the said Charles B. Tutan agreed to accept $3300.00 from plaintiff in full payment of said second mortgage if plaintiff purchased said property from Grier Enterprises, Inc.
“f. Pursuant to the agreements described in sub-paragraph e, plaintiff, through her said agent, paid $3300.00 on March 9, 1957 to the defendant Charles B. Tutan, who accepted said sum of money from plaintiff’s agent in full payment of said second mortgage knowing that said sum of money constituted part of the consideration which plaintiff was paying for the purchase of said property from Grier Enterprises, Inc.; and upon payment of said money to him the said Charles B. Tutan delivered to plaintiff’s agent a satisfaction of said mortgage, executed by Stanley P. Nitsche, a photostatic copy of said satisfaction, recorded in Official Records Book 121 at page 160 of the public records of Dade County, Florida, being attached hereto as Exhibit ‘F’. Plaintiff, through her said agent, then consummated the purchase of said property by paying $700.00 to John T. Grier, as agent for Grier Enterprises, Inc., for the equity of said corporation in said property, whereupon Grier Enterprises, Inc. executed and delivered to plaintiff’s agent a warranty deed conveying said property to said agent subject to the first mortgage described above, a photostatic copy of said warranty deed, recorded in Official Records Book 121 at page 162 of the public records of Dade County, Florida, being attached hereto as Exhibit ‘G’.
“g. On March 13, 1957, upon being advised that plaintiff desired to take title to said property in her name rather than in the name of her agent, Grier Enterprises, Inc. executed and delivered to plaintiff the warranty deed described in paragraph 3 above, a photostatic copy of said deed being attached hereto as Exhibit ‘A’; and on September 22, 1957 said agent, Walter A. West, Jr., a single man, executed and delivered to plaintiff a warranty deed conveying to plaintiff any interest he had acquired in said property by the warranty deed described in sub-paragraph † above, a photostatic copy of said warranty deed from Walter A. West, Jr., a single man, to Lena F. Doyle, recorded in Official Records Book 455 at page 355 of the public records of Dade County, Florida, being attached hereto as Exhibit ‘H’.
“h. At the time of the purchase of said property by plaintiff in March 1957, the suit mentioned in sub-paragraph d was pending on motion to dismiss the complaint and said suit continued in that status for a period of approximately nine months until December 4, 1957 when Charles B. Tutan, as Executor of the Estate of Lorna Higgins, took the first of several steps to bring said suit to final hearing; and when he applied for the final decree mentioned in paragraph 4 above the said Charles B. Tutan, as Executor of the Estate of Lorna Higgins, knew:
“(1) that plaintiff had purchased said property from Grier Enterprises, Inc. in March 1957 for a valuable consideration;
*46 “(2) that he, individually, as sole beneficiary of the Estate of Lorna Higgins, deceased, and as Executor of said Estate, had approved said sale by accepting $3300.-00 from plaintiff in payment of the second mortgage he held on said property, knowing that said $3300.00 was part of the consideration which plaintiff was paying to Grier Enterprises, Inc. for said property;
“(3) that plaintiff had taken exclusive possession of said property when she consummated said purchase in March 1957 and had been making the monthly payments on the first mortgage on said property in the meantime; and
“(4) that the entry of a decree like the one mentioned in paragraph 4 above would defraud plaintiff of the money which she had paid for said property, including the $3300.00 which she had paid to Charles B. Tutan himself.
“7. Neither plaintiff nor her agent, Walter A. West, Jr., had any knowledge of the pendency of the suit described in sub-paragraph d of paragraph 6 or of the claims asserted in said suit by Charles B. Tutan, as Executor of the Estate of Lorna Higgins, deceased, at the time she purchased said property from Grier Enterprises, Inc. in March 1957 or at any time thereafter until plaintiff received from Rosenhouse & Rosenhouse, attorneys for Charles B. Tutan, as Executor of the Estate of Lorna Higgins, a letter dated May 7, 1958 informing her of the entry of the final decree aforesaid, a photostatic copy of said letter being attached hereto as Exhibit T.”[2]
The facts thus disclosed and alleged did not lack substance, and were sufficient, if proved, upon which to predicate relief, and the learned chancellor erred in holding that the complaint failed to state a cause of action.
A principal question involves the effect to be given the lis pendens notice which was on file in connection with the Tutan-Grier suit, during the pendency of which suit appellant bought the property under the circumstances alleged.
We do not overlook the rule that a purchaser of the subject matter of a suit, pendente lite, and when lis pendens is filed, takes subject to the decree subsequently rendered in such suit. Intermediary Finance Corporation v. McKay, 93 Fla. 101, 111 So. 531; Greenwald v. Graham, 100 Fla. 818, 130 So. 608. See § 47.49, Fla.Stat., F.S.A.
However, the doctrine of equitable es-toppel may be applied against a lis pen-dens. It may support one whose rights are acquired pendente lite, as against the successful party, in bar of the rule of the lis pendens. Bennett, Lis Pendens, 178-184; 54 C.J.S. Lis Pendens, § 53. See 3 Pomeroy, Equity Jurisprudence, §§ 810a-812 (5th Ed. 1941).
Here it is alleged that Tutan knowingly stood by and permitted appellant to purchase the property from Grier as being the owner, while he, Tutan, was claiming the ownership thereof through his suit, the existence of which he did not reveal. Further, it is alleged that Tutan participated in the negotiations and the purchase transaction; that he approved the sale and personally benefited by it; and it is disclosed that his silence continued during the period of more than a year following appellant’s purchase of the property, before his demand on obtaining a favorable decree in his suit against Grier, and that during such period the appellant made the monthly payments on the outstanding first mortgage.
“Equitable estoppel, so far as it relates to the trial of title to land, is a doctrine by which a party is pre *47 vented from setting up his legal title because he has through his acts, words, or silence led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience.
“If one man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his claim, he shall not after-wards be permitted to exercise his legal right against such person. * * * ” Coram v. Palmer, 63 Fla. 116, 58 So. 721, 722.
“Estoppel is frequently based upon the acceptance and retention by one having knowledge or notice of the facts of benefits from a transaction, contract, instrument, regulation, or statute which he might have rejected or contested. This doctrine is obviously a branch of the rule against assuming inconsistent positions, and it has been said that such cases are referable, when no fraud either actual or constructive is involved, to the principles of election or ratification rather than to those of equitable estoppel. The result produced, however, is ■clearly the same and the distinction is not usually made. Such estoppel operates to prevent ‘the party thus benefited from questioning the validity and effectiveness of the matter or -transaction in so far as it imposes a liability or restriction upon him, or, -in other words, it precludes one who accepts the benefits from repudiating the accompanying or resulting obligation. It finds application in many different fields and under a wide variety of circumstances, many of which are discussed in detail elsewhere in this work. One of the most important applications of the rule is to prevent a party from establishing a right or title in himself, under one provision or implication of a deed or other instrument, by ignoring or contradicting another provision or implication which is destructive or fatally repugnant. It is also applied to prevent one who, with knowledge, accepts the proceeds of sale of his property or of property on which he has a lien or in which he is otherwise interested from disputing the validity of such sale or the title of the purchaser; * * * ”. [Emphasis supplied.] 19 Am.Jur., Es-toppel, § 64.
“ * * * A strong case of estoppel is made out when, by conduct or representation, an owner encourages another to believe that a third person is the owner of land and thereby induces him to purchase or take a mortgage on the property or to credit or otherwise favor such third person on the strength of such supposed ownership.” Id. § 129.
Accord: Dunn v. Fletcher, 266 Ala. 273, 96 So.2d 257; Hollingsworth v. Handcock, 7 Fla. 338; Hagan v. Ellis, 39 Fla. 463, 22 So. 727; Blackburn v. Venice Inlet Co., Fla.1948, 38 So.2d 43, 46-47; Cowgill v. Hopkins, Fla.1951, 52 So.2d 343, 344; Rice Window Mfg. Co. v. Evans, Fla.1954, 71 So.2d 164; Trustees of Internal Improvement Fund v. Claughton, Fla.1956, 86 So.2d 775, 790-792; Peeler v. Hutson, 202 Miss. 837, 32 So.2d 785.
We reverse the order of dismissal, and remand the cause for further proceedings.
Reversed and remanded.
HORTON and PEARSON, JJ., concur.

. The letter of May 7, 1958, to appellant from the executor’s attorneys follows:
“Mrs. Lena F. Doyle
5827 S.W. 29th Street
Miami, Florida
“In Re: 5827 S.W. 29th Street, Miami, Florida, also known as Lot 21 of Block 1 and the Bast 25 ft. of Lot 13, Block 1, Schenley Park
“Dear Mrs. Doyle:
“On the 28th of April 1958, the Circuit Court of Dade County, Florida, entered a final decree affecting the above property. This decree orders Grier Enterprises, Inc. to re-convey the above described property to the Executor of the Estate of Lorna Higgins, among other things.
“The suit in which the final decree was entered was filed 10/23/56, and on this date there was a lis pendens filed (notice of litigation pending) in the clerk’s office, which lis pendens,' under the law -was notice to all the world that any one receiving an interest in this property subsequent to this date takes it subject to the judgment of the court.
“The records show that Grier Enterprises Inc. gave a warranty deed to one Walter A. West, Jr., dated March 1, 1957 (please note that this was after the recordation of the lis pendens), and the records also show that Mr. West executed a warranty deed to you on March 9, 1957, which deed, as you can well note is subsequent to the recordation of the lis pendens.
“This property, therefore, under the decree, now belongs to the estate of Lorna Higgins, and prior to taking any steps to remove all persons from this property, we advise you about same, so that if you are interested in acquiring this property, we will be glad to discuss same with you. We are the attorneys for the plaintiff in the case.
“Xours very truly,
Rosenhouse & Rosenhouse
By: /s/ M. H. Rosenhouse”

. This letter is ,sot out in footnote 1, supra.