247 So.2d 368

**J. Bruce PARDUE et al.**

v.

**CITIZENS BANK & TRUST COMPANY,
a Corporation, et al.**

2 Div. 535.

Supreme Court of Alabama.

March 25, 1971.

Rehearing Denied May 13, 1971.

Hill, Hill, Stovall, Carter & Franco, Montgomery, for appellees.

S. P. Keith, Jr., Birmingham, for appellants.

MERRILL, Justice.

This appeal is from a decree granting, in part, the prayer for relief of the appellees, Citizens Bank & Trust Company, hereinafter referred to as the Bank, and its directors, and denying the cross bill of appellants, J. Bruce Pardue, hereinafter referred to as appellant, and Citizens Development Corporation.

The bill, as amended, alleged that the Bank was organized in Selma in 1959 with appellant as president and chairman of the board of directors. He continued in that capacity until he was discharged on March 23, 1966. When organized, the Bank acquired a building and lot fronting east on Broad Street and a fifteen-foot alley easement along the north side of the building for ingress and egress. Later, this fifteen-foot alley easement was extended westward through the block to connect with the next street to the west, Lauderdale Street. The next lot south of the Bank lot was a corner lot, facing 100 feet on Broad Street and 115 feet on Jeff Davis Avenue. With the approval of the board of directors, appellant proceeded to remodel and alter the building to make it suitable to bank use. He installed on the north wall of the building a drive-in teller window, metal canopy, night depository, downspouts, electrical conduits, and similar installations which encroached a few inches into the alley easement. The shed over the drive-in window encroached 4.78 feet. Two or three years later, he raised the elevation of the alley approximately eight inches to bring drivers of automobiles to a convenient level with the drive-in window.

Appellant then undertook the promotion of a shopping center within the block of which the Bank was a part. He represented to the officials and directors that the shopping center would complement the services of the Bank and would provide parking which would be for the mutual benefit of the Bank and the stores in the center. With his active participation, Mid-Selma Land Company, Inc., a private corporation, was organized by all of the directors of the Bank to acquire, and it did acquire, properties within the block. Appellant, with the sanction of the board of directors, and some of them joining with him, organized Citizens Development Corporation to develop and own the shopping center. On the basis of representation by appellant, Mid-Selma Land Company on December 23, 1963, conveyed to the Bank for expansion a parcel of land contiguous to the Bank at its west end, identified on the map as Tract B. On the same date, it conveyed to Citizens Development Corporation contiguous land which was later developed as a part of the shopping center parking lot. Parking easements for the Bank were not expressly reserved. However, appellant, acting for Citizens Development Corporation, had prepared an overall plan for the development of the complex. The evidence later reflected this plan, dated September 7, 1963, and a copy is attached to the court's decree.

In 1968, appellee Bank, at a cost in excess of $50,000.00, constructed an addition on Tract B of its property following the

plan of development prepared by the appellant for Citizens Development Corporation. No objection was made to the construction until it was substantially completed. At that time, appellant owned all the stock of Citizens Development Corporation.

Following completion of the bank addition, appellant conducted harassment tactics designed to hinder the use by the Bank of its facilities, particularly those in the alley. Intermittent repairs to the alley surface hindered the use of the drive-in window. The area next to the window was lowered eight inches to its original grade. Likewise, over the protest of the Bank, appellant caused to be constructed a brick wall around the bank addition to a height of six to eight feet, preventing access of vehicles and pedestrians to the addition from Jeff Davis Avenue as had been planned in the development scheme.

The complaint sought an injunction against harassment and limitations on the use of the bank facilities, the removal of the wall, and a declaratory judgment that the Bank was not indebted to appellant for unearned salary in 1966.

The appellants filed a cross bill in which they sought an adjudication of substantially the same issues which were raised in the original bill. The cross bill also claimed payment for a year's salary from the Bank to appellant. For answer to this aspect, the appellees included defenses that (1) there was no contract of employment and appellant Pardue was subject to release at any time, (2) that his discharge was "by reason of misfeasance and non-feasance in office" which was detrimental to the best interest of the Bank, and (3) that there was an accord and satisfaction by the payment to Pardue of $2,750.00 as severance pay.

The trial was begun on September 8, 1969, and consumed twelve full working days over a period of three weeks. The transcript consists of five separate volumes totaling 1,131 pages.

The trial judge was personally familiar with the block where the Bank and shopping center were located and, with the consent of all the parties, he made a special trip to the area and personally inspected the premises.

A decree was rendered on February 23, 1970, which granted:

1. An injunction prohibiting appellants from obstructing the Bank's ingress and egress of the fifteen-foot alley easement or changing traffic pattern.

2. The right to the Bank to change grade in alley at drive-in window about eight inches.

3. An injunction requiring appellants to demolish wall around west and south end of Tract B.

4. An injunction from changing the design of parking area and vehicular passageway between Tract B and Jeff Davis Avenue or obstructing such lane of traffic.

5. An injunction from denying to complainants and customers and employees of the Bank the right to freely park anywhere in parking area of shopping center, and denying the prayer of cross bill.

The trial court's very studied and comprehensive decree covers nine pages of the transcript, and gives a much more detailed history of the controversy and findings of fact than we state in this opinion, and anyone desiring to fully comprehend the reasoning of the court is referred to that opinion. We refer only to the decree as is necessary in discussing the various assignments of error.

We quote from the trial court's opinion:

"* * * The parties were given broad latitude in the presentation of these issues and in the introduction of evidence, but the Court in its findings of facts and analysis of all of the evidence made the basis of this decree has pursuant to Title 7, Section 372(1) of the 1958 Recompiled Code of Alabama, considered only evi-

dence which is relevant, material, competent and legal."

The assignments of error are grouped for disposition. It is well to note that appellant Pardue testified that he owned one hundred per cent of the stock in appellant Citizens Development Corporation and that he spoke for the Corporation. The trial court found that Pardue was the alter ego of the corporation after he acquired all the stock in 1966.

 Assignments 1, 2, 6, 7, 84 and 85 are concerned with the alley rights, and relate to the encroachments along the north wall of appellees' property and the eight-inch raise in elevation of the alley at the drive-in teller window.

The finding as to the encroachments is as follows:

"The Court further finds from the evidence that with respect to the encroachment of bank facilities upon the alley, such so-called encroachments are not repugnant to or inconsistent with the deed by which Citizens Development Corporation acquired the underlying fee, but on the contrary the title of the respondent Citizens Development Corporation is subject to such encroachments. Coley v. W. P. Brown & Sons Lumber Co., 251 Ala. 253 (235), 36 So.2d 326, [37 So.2d 125]; McCarter v. Crawford, et al., 156 N.E. 90, 245 N.Y. 43; Texaco Inc. v. Bigott, [Pigott], 255 F.Supp. 458 ([D.C.] 1964), affirmed 358 F.2d 723 (5th Cir., 1966).

"It follows as a necessary sequence of the findings and opinion of the Court that the removal by respondents of the eight inch elevated concrete ramp servicing the teller window of complainant bank was improper and in derogation of rights of the bank. It is the finding and opinion of the Court from all of the evidence that the restoration of the grade level of the area-way in the vicinity of the drive-in teller window of the bank to substantially the same elevation which existed prior to its removal should be permitted."

Some of the testimony supporting the finding of the trial court was that appellant, while serving as president of the Bank, caused the encroachments to be constructed in the alley, and caused the grade in the alley near the teller's drive-in window to be raised eight inches. He acknowledged that he knew the items were encroachments when he directed the contractor to place them there. He also arranged for the deed conveying the underlying fee to Citizens Development Corporation in 1963. The deed to his corporation was made "subject * * * to encroachments." Appellant testified that had he been the grantor he also would have made the deed subject to the existing encroachments.

The words "subject to" have been construed by this and other courts. In Blackwell v. Burketts, 251 Ala. 233, 36 So.2d 326, where the court, in construing the words "subject to the stipulations hereinafter set forth" in a testamentary bequest, said "The natural and legitimate office of such proviso is to indicate that subsequent provisions would qualify these bequests."

In McCarter v. Crawford, 245 N.Y. 43, 156 N.E. 90, where the contract of sale was made "subject to such a state of facts as an accurate survey would show," the Court of Appeals said:

"* * * To take *subject to* means to be *subordinated to* these facts. If a survey showed that one of the buildings encroached upon adjoining property, the plaintiff agreed to take subject to, or under this state of facts. Unless we give this meaning to the provision, it might just as well have been left out of the contract. * * *

* * * * * *

"'The encroachments claimed to have existed did not constitute a valid objection in view of the terms of sale under

which the property was sold, which recited that it was to be taken subject to any state of facts which an accurate survey might show.' "

In Texaco, Inc. v. Pigott, D.C., 235 F. Supp. 458, aff'd 358 F.2d 723 (5th Cir.), it was held that the words "subject to" as used in a deed mean "subservient to" or "limited by" and are "words of qualification showing the grantor's intent not to grant an absolute title."

Appellants argue that the trial court "in its decree is enlarging the rights granted by deed giving the easement and is attempting to do so by estoppel." We treat the question of estoppel in the next group of assignments, but it is sufficient here to say that the trial court's finding was not solely on estoppel but, as shown in the two paragraphs of its opinion quoted supra, the title of appellant's corporation "is subject to such encroachments." The assignments relating to the encroachments on, and the grade of, the alley present no errors requiring a reversal.

Assignments of error 3, 4, 5, 8, 86, 87 and 88 charge that the court erred in ordering the demolition of the wall built by appellants on the west and south sides of Tract B, in giving the right of parking for bank customers in the parking lot, and in granting the right of access through the bank addition on Tract B between Jeff Davis Avenue on the south and the alley easement on the north.

The trial court found that when Mid-Selma Land Company (organized by the directors of the Bank) conveyed its interest to Citizens Development Corporation, the conveyance and the option preceding it were made on the verbal assurances of Pardue "that the entire shopping center development was for the primary benefit of the bank which among other benefits would enjoy unrestricted parking privileges in the parking area of the shopping center. The assurance to the directors of advantages to be derived by the bank, including parking privileges, was a major factor inducing the directors to approve the conveyance by Mid-Selma Land Company, Inc. to respondent Citizens Development Corporation." Also, that while acting as president of the Bank, appellant planned and caused to be prepared a map for the development of the shopping center as a whole, and to correlate its facilities with those being planned for the Bank, including the Jeff Davis Avenue-alley passageway with bank offices in the second story above it, parking for banking customers and employees in certain spaces in the general parking area, and the passageway and parking according to the plan was used during, and subsequent to, appellant's presidency of the Bank. This same map or plan "was approved by the A & P Tea Company and the Elmore Stores, the two major tenants of the shopping center and incorporated in the leases of each." Also, that the parking areas and ways were continuously used by the Bank and others between 1966, when appellant was dismissed as president of the Bank, "until the substantial completion by the bank in 1968 of its facilities on Tract B of its property. The respondent Pardue registered no objection to this use but on the contrary tacitly acquiesced in the same."

We now quote at length from the trial court's opinion and decree:

"In the year 1968, the complainant bank, using the concept which had previously been formulated by respondent Pardue and incorporated in plans for the development of the entire shopping center, undertook the construction of its addition on Tract B. The ground floor area of the addition was left open for vehicular traffic running north and south between the alley and Jeff Davis Avenue. The concept was further followed by the construction of bank offices on the second floor of this addition. The placement of a teller window in Tract B was left open for further implementation. The Court is convinced from the evidence that the respondent Pardue was aware of the construction of this addition and that it followed in essential details the

concept which he had formulated for correlating the facilities of the bank with those of the shopping center. He watched it as it progressed and until in the final stages of completion, making no objection to the construction nor did he in any way bring to the attention of the board that he would repudiate the plan of development of which he was the author. When this bank addition was substantially completed, and the bank had expended or became obligated for over $50,000 for its construction, he for the first time brought to the attention of the bank board his contention that parking for the bank was limited to an area in proximity to the A & P and Elmore stores, i. e., the area on which an easement for parking had been legally reserved.

"The Court finds in summary of the evidence that the directors of complainant bank in causing the construction of the bank addition on Tract B of its property relied upon assurances given by respondent Pardue that parking for bank purposes was unrestricted throughout the area designated for parking. They relied upon a policy which respondent Pardue had put into effect while president of the bank reserving to its customers the lane of parking nearest the western boundary of Tract B and requiring bank employees to park in the area just beyond, both lanes being in an area of the parking lot on which no written easement for parking was reserved. The directors generally were not aware that parking privileges did not extend throughout the shopping center. They relied upon continued unrestricted parking to which respondent Pardue made no objection for more than two years after the dismissal of respondent Pardue as president. They relied upon a development concept which had been planned by respondent Pardue and drafted by an engineer employed by him and under his direction. The directors of the bank relied upon the fact that the shopping center and the parking lot had been constructed to conform specifically to the development plan which offered obvious advantages to both shopping center and to the bank. In reliance upon all these factors and a course of conduct by respondent Pardue extending over a period of more than five years which was implicit in the testimony of the witnesses throughout the lengthy trial of this cause, the directors were led to believe and did believe that the bank had the right to construct upon Tract B of its property a building following the concept of the development plan and to utilize such building when completed for bank purposes in accordance with that plan. The Court is convinced from all the testimony and evidence that respondent Pardue was aware of the construction of this addition as it progressed and in the view of this Court elemental justice required him to speak and make known his contention that the bank could not use its facilities in the manner he himself had planned for such facilities to be constructed and used. He wholly failed to do so. On the contrary he stood by in silence until the bank had expended over $50,000 on a plan of which he was the author, and then in April of 1969 respondent Pardue constructed a brick wall of the height of some six to eight feet, enclosing the west and south sides of the bank building which had been constructed on Tract B. The effect of this wall was to prevent the movement of vehicular traffic to and through the bank addition between the alley and Jeff Davis Avenue; likewise to hinder the movement of pedestrians between adjacent parking areas and the bank facilities. The Court is impressed with the maxim of equity that 'he who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to keep silent.' Dunn v. Fletcher, 266 Ala. 273, 96 So.2d 257 (261). As elsewhere stated: 'Every additional brick added to the structure was an argument against the defendant's silence and each stroke of the carpenter's hammer a voice commanding him to speak.' Forney v. Calhoun County, 86 Ala. 463 [5 So. 750]; Thompson v. Page, 255 Ala. 29, 49 So.2d 910; Ala. Great Southern RR v. South & North Ala. RR, 84 Ala. 570, [3 So. 286]; Burleson v. Mays, 189 Ala. 107,

66 So. 36. This Court concludes that in this court of equity the respondent Pardue and the respondent Citizens Development Corporation, and their respective heirs, successors and assigns are and were estopped to repudiate a development plan which they had authored and on which complainant bank had relied, by altering in any material way the physical characteristics of that part of the shopping center which provides an open passageway for vehicular and pedestrian traffic south from Tract B of the property of the bank to the north side of Jeff Davis Avenue or in any other way to obstruct the free flow of traffic, vehicular or pedestrian, over and along such area-way; and further that the wall erected by respondents around Tract B over the written protest of complainant bank was constructed in derogation of equitable rights of complainant bank and should be removed and the grade level of the area on which the wall was constructed should be restored to its natural grade; further that the respondents Pardue and Citizens Development Corporation, and their heirs, successors and assigns are estopped from preventing, objecting to or unduly restricting the equitable rights of the complainant bank through its officers, directors, employees and customers to park freely upon the areas designated for parking throughout the shopping center. * * * "

The main thrust of appellants' argument is that the basis of this part of the trial court's decree was equitable estoppel, that an easement cannot be created by equitable estoppel, that "there is no equity in this cause," and absent equity, then neither estoppel nor injunction is available; also that estoppel has not been proved and there was no foundation for the court's decree.

We think the legal questions raised by appellants are answered by the case of Dunn v. Fletcher, 266 Ala. 273, 96 So.2d 257, where the complainant had legal title to property on which the respondent had erected a building and respondent had not acquired title by deed, by prescription or by adverse possession for the statutory period. The following statements and quotations are from cases cited with approval and followed in the *Dunn* case.

Estoppels in pais cannot affect the title to land in a court of law, but in equity a different rule prevails. Earnest v. Fite, 211 Ala. 363, 100 So. 637.

"Resting in parol, at law the estoppel was not available to appellee; but in a court of equity it has full operation." Hendricks v. Kelly, 64 Ala. 388.

"The contrary doctrine is so well settled in this state that, notwithstanding the requirements of the statute of frauds, declaring void certain contracts for the sale of land, unless evidenced by writing subscribed by the party to be charged, an equitable interest may be acquired in lands, without any written transfer of title, by conduct or declaration of the owner, which would create an estoppel *in pais* on his part." Alabama Great Southern R. R. Co. v. South & North Ala. R. Co., 84 Ala. 570, 3 So. 286.

"The doctrine of estoppel is founded upon the primary and ultimate aims of the law—the redress of wrong, the prevention of fraud, and the promotion of the ends of justice. Having its origin in good morals and in consideration of good faith, its operation and effect are useful and beneficent, when its application is confined to cases, where it is manifest that the acts or statements on which another has relied and acted cannot be retracted 'without a breach of faith on the one hand, and injury on the other.' The underlying principle is that declarations or admissions, express or implied, made for the purpose of influencing the conduct of another, if the designed effect ensues, are conclusive upon the party making them. What one person has induced another to believe and act on to his detriment will, as between them, be regarded as true." Adler v. Pin, 80 Ala. 351.

"It is a sound and honest rule of equity, supported by principles of justice as well

as of public policy, that if one knowingly though passively, suffers another to purchase and spend money on land, under circumstances which induce an erroneous opinion or mistaken belief of title, without making known his claim; he shall not afterwards, in a court of conscience at least, be permitted to successfully assert any right or title against the purchaser. (Citations omitted)." Burleson v. Mays, 189 Ala. 107, 66 So. 36.

"When the owner of land has knowledge of the fact that a railroad is proceeding to construct its road on his land, and allows it to expend large sums of money for this purpose, and for subsequent improvements upon said roadbed and right of way, without interfering or forbidding the company to proceed, such owner is estopped from evicting the railroad company by action of ejectment." Hendrix v. Southern Railway Co., 130 Ala. 205, 30 So. 596, Headnote 1.

"It is alleged in effect that in 1945 and 1946 Hugh F. Thompson stood by and saw John C. Page erect valuable improvements on the lot sued for and by silence acquiesced in the making of valuable improvements on the lot by John C. Page, knowing all the time that John C. Page was acting under the assumption that he himself had title and that appellant had no interest in the parcel of land sued for. *If true, this situation works an estoppel against Hugh F. Thompson.* (Citations omitted) 'Every additional brick added to the structure was an argument against the defendant's silence [and each stroke of the carpenter's hammer] a voice commanding him to speak.' Forney v. Calhoun County, 86 Ala. 463, 5 So. 750, 752." (Emphasis supplied.) Thompson v. Page, 255 Ala. 29, 49 So.2d 910.

While there was some conflict in the evidence, there is evidence to support the findings of the trial court. The bill did contain equity and the doctrine of equitable estoppel was correctly applied.

Assignment of error 9 charges that the court erred in denying appellant's cross bill claiming a full year's salary inasmuch as appellant "was fired without just cause."

The trial court's finding on this aspect of the case follows:

"Much testimony was taken and evidence introduced relating to the claims asserted by respondent Pardue for salary after his removal as president on March 23, 1966. Much of this concerned reasons for his discharge. In the light of all the evidence the Court is of the opinion that the respondent Pardue as cross-complainant in this cause has not carried the burden of proof to show that his election was tantamount to a contract of employment of one year's duration. It is noted among other evidence that in the minutes of the meeting of the board of directors of Citizens Bank & Trust Company held on the 12th day of January, 1966 (Ex. C–21) no specific term of office was indicated nor is a one year term of office for the president prescribed by the by-laws of the corporation. The minutes of the board of directors held on the 2nd day of February, 1966 (Ex. C–22) specifying an annual salary for cross-complainant Pardue is not in the opinion of this Court itself sufficient to create an actual contract of employment of that duration. The Court is convinced that the power of amotion is incidental to the power of appointment and that cross-complainant Pardue was subject to removal as president whenever in the judgment of the board of directors of Citizens Bank & Trust Company the best interest of the bank required it. 2 Fletcher on Corporations, Section 353; 19 Am.Jur.2d Corporations 1105. The directors were of the considered opinion that the best interest of the bank did dictate the removal of cross-complainant Pardue as president. Accordingly the Court is of the opinion that it is unnecessary for the Court to make a finding of fact on the great volume of evidence relating to the removal of the respondent Pardue for cause. For identical reasons the Court does not find it necessary to

pass upon the issue of whether there has been an accord and satisfaction in connection with the receipt by the respondent Pardue of severance pay. Republic Steel Corp. v. Maddox, 275 Ala. 685, 158 So.2d 492; Ex Parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662; South Carolina Cotton Growers Association v. Weil, et al., 220 Ala. 568, 126 So. 637."

■■ We agree that generally the power of appointment includes the power of amotion. The right to remove officers of a private corporation is inherent and exists in the absence of statutory authorization. Badger Oil & Gas Co. v. Preston, 49 Okl. 270, 153 P. 383; and in New Founded Industrial Missionary Baptist Ass'n v. Anderson, La.App., 49 So.2d 342, it was said: "Under the general law, the power of amotion of officers is inherent in every private corporation as an incident of its very being, and may be expressly conferred by statute or by charter. 19 C.J.S. Corporations § 738, p. 71."

While the trial court did not pass on the evidence relating to the removal of appellant for cause, we note that it seems to be generally held that an officer of a corporation may be discharged for cause, whether or not under contract. 2 Fletcher on Corporations, § 351, 19 C.J.S. Corporations § 738(3).

We find no reversible error in the trial court's denial of the salary claim under the cross bill.

We come now to rulings on objections to evidence. The trial court could have heard the evidence without making a ruling, and the decree affirmatively shows that the court "considered only evidence which is relevant, material, competent and legal," under the 1943 Act which is listed in the pocket parts of the 1940 Code and the 1958 Recompilation as Tit. 7, § 372(1). But specific objections were made and, in some instances, the court did rule on them.

Assignment of error 31 reads:

"The Court erred in overruling objection to the following question:

"Q. Mr. Cooper, had you known that this was his purpose or that was his objective would you, as a stockholder or as a director of Mid-Selma, ever had acquiesced in the giving to him of an option for this land that lies immediately contiguous to this bank?"

Objection was made and the court overruled the objection. But there was no answer by the witness. Then another question was asked and answered without objection:

"Q Had you been told that parking would be prohibited in this area shaded gray on Exhibit No. 1, under no consideration would you have approved the execution of that option?

"A No, sir, I would not have."

■ The question made the subject of assignment 31 was not answered and no reversible error could have resulted in the court's ruling on it. Wallace v. Phenix City, 268 Ala. 413, 108 So.2d 173; State v. Hodge, 280 Ala. 422, 194 So.2d 827.

We have also held that where an objection to a question has been ruled on by the court, but is repeated in a slightly different form, objection must be made again to the question or the answer. State v. Hodge, supra; Marbury Lumber Co. v. Heinege, 204 Ala. 241, 85 So. 453.

■ Here, no objection was made to the second question or answer, and it follows that even if the question had been inadmissible on proper objection and subject to exclusion on proper motion (which we do not here decide), the evidence was before the court for consideration in the absence of any objection. State v. Hodge, supra; Vinyard v. Duck, 278 Ala. 687, 180 So.2d 522.

One or more of the above stated principles apply to similar questions asked other

directors made the subject of assignments 34, 43, 44, 45 and 61. On two more of the same group, and 47 and 54, the trial judge stated that he allowed the questions and answers because they went to the question of estoppel, and on 61, the objection to the question was overruled, but when the witness answered, the court stated: "Sustain. That is out."

Although not connected with the question of estoppel, the same principles applied to assignment 31, supra, apply to the rulings made the subjects of assignments of error 23 and 41.

■ Assignments 24, 32, 36, 41, 46, 47, 59, 64 and 65 are argued together under the argument that the questions "are based on conclusions as to facts in issue." Assignment 36 charges error in overruling the objection to the following question asked director Jones, "Did you reach in your mind what was a considered and informed opinion?" This question, of itself, was admissible, and coming on redirect examination, after a cross-examination when practically the same question had been asked and answered it was clearly admissible, and there is no merit in assignment of error 36. Assignment 41, charging error in the overruling of an objection to the question, "But did he give you assurance that you could have a free flow of traffic through this Tract B?," has already been treated and it is not related in any way to assignment 36.

■ It follows that we apply the rule that where unrelated assignments of error are grouped and argued together, and one is found to be without merit, others in the group will not be considered. Associates Investment Co. v. Hamm, 284 Ala. 332, 224 So.2d 880; Brooks v. Everett, 271 Ala. 354, 124 So.2d 105. This disposes of this group of assignments of error.

■ The same rule disposes of assignments 39, 75, 76 and 77. Assignment 39 charged error in sustaining objection to records of approved loans to Rex Moore in 1961, which were not the basis of any action in this case. Assignment 76 was totally unrelated, charging error in refusing to admit in evidence the bank earnings and dividend reports for the years 1967, 1968 and 1969, periods *after* appellant had left the Bank in 1966. These reports were obviously inadmissible.

■ Assignments 71, 72 and 73 relate to questions asked bank director Hobbs. The only argument in brief in support of them are that the questions "asked for a conclusion explicitly and were therefore objectionable." An example is the question made the subject of assignment 71:

"Q. Mr. Hobbs, as the result of all of the investigation and all of the discussions that were had, and all of the attention of the other Board members to your knowledge, did you come to a final conclusion as to the necessity of the complete release of Mr. Pardue from his duties as President and Chairman of the Board?"

Assuming, only for the sake of argument, that the question was objectionable, all the questions and rulings made the subject of assignments 71, 72 and 73 were concerned with the alleged reasons why the directors may have had cause to discharge appellant. But the trial court specifically stated that it was "unnecessary for the Court to make a finding of fact on the great volume of evidence relating to the removal of the respondent Pardue for cause." In view of this posture of the case, the rulings on the admissibility of this feature of the evidence did not probably injuriously affect the substantial rights of appellant. Supreme Court Rule 45.

■ We are convinced that the trial court's findings were supported by the evidence. Moreover, the findings and conclusions of fact made by a trial court, based on testimony taken ore tenus, are presumed to be correct, and such findings and conclusions carry with them the force of a jury verdict. Unless such findings and

conclusions are plainly wrong or without supporting evidence, or are manifestly unjust, which we do not find to be the case, the final decree is due to be affirmed. Renfroe v. Weaver, 285 Ala. 1, 228 So.2d 764, and cases there cited.

Moreover, as already noted, the trial court, with the consent of the parties, personally inspected the premises before making its findings of fact, and, hence, there is this additional reason why the decree here is reviewed as if it were a verdict of a jury. Miles v. Moore, 262 Ala. 441, 79 So.2d 432; McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160; Crawford v. Tucker, 258 Ala. 658, 64 So.2d 411.

No reversible error has been presented.

Affirmed.

HEFLIN, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.