740 So.2d 362 (1999)
WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY,
v.
Larry Dewayne HARRIS.
1980395.
Supreme Court of Alabama.
May 7, 1999.
Rehearing Denied July 16, 1999.
W. Percy Badham III, Stephen C. Jackson, and Brannon J. Buck of Maynard, Cooper & Gale, P.C., Birmingham, for appellant.
William H. Atkinson and J. Daryl Burt of Fite, Davis, Atkinson, Guyton & Bentley, P.C., Winfield, for appellee.
Frank M. Bainbridge and Alfred F. Smith, Jr., of Bainbridge, Mims, Rogers & Smith, L.L.P., Birmingham, for amicus curiae *363 National Fraternal Congress of America.
Donna Ward Black and Richard F. Pate of Richard F. Pate & Associates, P.C., Mobile, for amici curiae Gene D. Pruett, Sr., and Glenda Y. Pruett.
Thomas T. Gallion III of Haskell, Slaughter, Young & Gallion, Montgomery, for amicus curiae Woodmen of the World-Alabama Jurisdiction.
HOUSTON, Justice.
Woodmen of the World Life Insurance Society ("Woodmen"), a defendant in an action pending in the Marion Circuit Court, appeals from the trial court's order denying its motion to compel arbitration of the fraud claims filed by the plaintiff, Larry Dewayne Harris.[1] We reverse and remand.
The pertinent facts are as follows: Woodmen is a licensed fraternal benefit society organized under the laws of Nebraska. Fraternal benefit societies are regulated in Alabama under Ala.Code 1975, §§ 27-34-1 to -54;[2] these statutory provisions appear as part of Title 27, known as the Alabama Insurance Code, see § 27-1-1. As a Woodmen certificate holder, Harris is contractually bound by Woodmen's constitution and bylaws and any amendments thereto. In compliance with § 27-34-29(a), Woodmen's standard certificate of insurance benefits provides that the contract between it and its insureds includes not only the certificate itself but also Woodmen's articles of incorporation, its constitution, and its bylaws.[3] After Harris became a member of Woodmen, but before he filed his action, Woodmen amended its constitution to include a "Problem Resolution Procedure," which includes arbitration. The amendment provides in part:
"Sec. 2. Resolution of Individual Disputes.

"(a) Purpose. The purpose of this Section 2 is to provide opportunities for members and benefit certificate owners and beneficiaries to be promptly heard and to seek fair resolution of any disputes regarding any individual rights or individual interests they have or claim to have as members, benefit certificate owners or beneficiaries, consistent with *364 the fraternal nature of the Society and without the delay and expense of formal legal proceedings. This Section 2 is intended to apply to all current and future members and to all current and future benefit certificates.
"(b) Scope. This Section 2 shall apply whenever a member or a benefit certificate owner or beneficiary of the Society makes a claim for damages, or claims any form of redress for a violation of his or her individual rights or a denial of individual privileges or benefits which he or she claims as a member or benefit certificate owner or beneficiary. This includes, but is not limited to, disputes involving alleged fraud, misrepresentation, discrimination, denial of civil rights, conspiracy, defamation, or infliction of distress by the Society or any officer, employee or agent of the Society; and includes disputes regarding the denial of benefit claims under any certificate to the extent the procedures of this Section 2 are not prohibited by applicable law. No lawsuit may be filed against the Society or any officer, employee, or agent of the Society on any dispute covered by this Section 2 until procedures described herein have been exhausted; and a lawsuit may then be filed only if the applicable law does not recognize the procedures herein to be final and binding with respect to the matter in dispute....
"(c) Procedures. A member or benefits certificate owner or beneficiary seeking to initiate the problem resolution procedure of this Section 2 shall contact the designated Problem Resolution Officer of the Society, who shall assist the member or benefit certificate owner or beneficiary in requesting and arranging for the following problem resolution steps:
"Step 1. Informal negotiation arranged by the Problem Resolution Officer, involving the member or benefit certificate owner or beneficiary and officials of the Society as appropriate to the dispute.
"Step 2. If step 1 does not result in a mutually satisfactory resolution, mediation administered by and in accordance with the applicable mediation rules of the American Arbitration Association (or another neutral organization mutually agreed upon).
"Step 3. If step 2 does not result in a mutually satisfactory resolution, arbitration administered by and in accordance with the applicable arbitration rules of the American Arbitration Association (or another neutral organization mutually agreed upon). The arbitrator may award any and all damages or other relief allowed for the claim in dispute by applicable federal or state law, excluding attorneys fees unless otherwise required by applicable law. Unless (and to the extent) prohibited by applicable law with respect to the issue in dispute, the decision of the arbitrator shall be final and binding, subject only to the right to appeal such decision as provided in the arbitration rules and applicable law."
(Emphasis original.) It appears to be undisputed that this amendment was properly adopted, in accordance with the notice and voting requirements of Woodmen's constitution and bylaws.
The dispositive issue is whether a valid and enforceable arbitration agreement exists between Woodmen and Harris.
Woodmen contends that the arbitration provision is a part of Harris's certificate of benefits; that certificate, it says, is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). Woodmen argues 1) that Harris's certificate of benefits evidences a transaction involving interstate commerce; 2) that Harris's certificate incorporates Woodmen's constitution and bylaws and any amendments thereto, including the amendment adding the arbitration provision; 3) that, by operation of § 27-34-29,[4] the amendment adding the *365 arbitration provision became part of Woodmen's contracts with Alabama certificate holders, including its contract with Harris; and 4) that the trial court's order ignores the operative effect of § 27-34-29 and, therefore, that it violates the separation-of-powers doctrine set out in § 42 and § 43 of the Alabama Constitution of 1901.
Harris argues 1) that the McCarran-Ferguson Insurance Regulation Act, 15 U.S.C. § 1011 et seq. ("McCarran-Ferguson Act"), prohibits application of the FAA to his contract with Woodmen and, therefore, that Ala.Code 1975, § 8-1-41(3), renders the arbitration provision unenforceable;[5] 2) that there is no evidence of an agreement to arbitrate (i.e., that there is no evidence that he signed any document containing an arbitration provision or that he was aware before he filed his action that such a provision had been added to the Woodmen constitution);[6] 3) that enforcing the arbitration provision in the absence of an agreement to arbitrate would contravene the FAA and thereby violate his right to a trial by jury guaranteed under Article I, § 11, of the Alabama Constitution; 4) that enforcing the arbitration provision in the absence of an agreement to arbitrate would contravene the FAA and thereby violate his due-process rights under the Fourteenth Amendment to the United States Constitution, as well as his right to a "remedy by due process of law" under Article I, § 13, of the Alabama Constitution, by denying him the ability to seek a judicial resolution of his claims based on an accrued or "vested" cause of action (Harris argues that his cause of action accrued before Woodmen added the arbitration provision to its constitution.); *366 5) that the creation of an arbitration agreement by operation of § 27-34-29(c), after the accrual of his cause of action, would violate § 13 of the Alabama Constitution and thereby preclude application of the FAA; 6) that § 27-34-29(c), by prohibiting any "change, addition or amendment" that would "destroy or diminish benefits which the society contracted to give the member as of the date of issuance," prohibited Woodmen from amending its constitution so as to deny him the "benefit" of Alabama law, specifically § 8-1-41(3); and 7) that the amendment to the Woodmen constitution specifically provides that arbitration is authorized to the extent not "prohibited by applicable law" and that the applicable law is § 8-1-41(3).
The specific enforcement of a predispute arbitration agreement violates both Alabama statutory law and Alabama public policy (see § 8-1-41(3)), unless federal law preempts them. See Lopez v. Home Buyers Warranty Corp., 670 So.2d 35 (Ala.1995). Under the FAA, "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Harris does not dispute that his contract with Woodmen is one "involving commerce" within the meaning of the FAA. Therefore, unless the McCarran-Ferguson Act precludes application of the FAA, federal arbitration law preempts contrary state law and renders the arbitration provision enforceable, provided Harris and Woodmen agreed to arbitrate their disputes.
The McCarran-Ferguson Act provides, in part, that "[n]o act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The FAA does not specifically relate to the business of insurance. Harris argues, therefore, that the McCarran-Ferguson Act, by preserving to the states the right to regulate insurance, precludes the application of the FAA to his insurance contract with Woodmen. This argument is, of course, based on the premise that the Alabama legislature, "for the purpose of regulating the business of insurance," has enacted a law that regulates insurance certificates issued by fraternal benefit societies and that that law would be invalidated, impaired, or superseded by the FAA.
Assuming, without deciding, that the contractual arbitration of insurance claims constitutes "the business of insurance,"[7] the dispositive issue, as framed by Harris, is whether the legislature intended for § 8-1-41(3), Alabama's general statute prohibiting the specific enforcement of arbitration agreements, to apply to insurance certificates issued by fraternal benefit societies. Harris argues that a legislative intent to do so can be inferred from § 27-14-22, which states: "All contracts of insurance, the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof." However, an examination of chapters 14 and 34 of the Alabama Insurance Code (Title 27) establishes conclusively that the legislature has not undertaken to regulate arbitration provisions in certificates of insurance issued by fraternal benefit societies. Section 27-34-4 *367 ("Applicability of chapterGenerally"), which was originally enacted in 1911, Ala. Acts 1911, Act No. 476, p. 700, provides:
"Except as provided in this chapter, [fraternal benefit] societies shall be governed by this chapter and shall be exempt from all other provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose. No law hereafter enacted shall apply to them unless they are expressly designated therein."
In 1971, the legislature enacted a comprehensive revision of Alabama's insurance laws, Ala. Acts 1971, Act No. 407. Section 11 of Act No. 407, provided:
"APPLICATION OF CODE AS TO PARTICULAR TYPES OF INSURERS. No provision of this code shall apply with respect to:
". . . .
"(2) Fraternal benefit societies (as identified in chapter [30]), except as stated in chapters [30] (Fraternal benefit societies) and [31] (Conversion of fraternal benefit societies)."
Section 11 was codified as § 27-1-3, Ala. Code 1975. Section 27-34-54, which was also enacted as part of the 1971 revision, Act No. 407, § 726, states that "[i]n addition to the provisions heretofore contained or referred to in this chapter, other chapters and provisions of this title shall apply to fraternal benefit societies, to the extent applicable and not in conflict with the express provisions of this chapter, and the reasonable implications thereof, as follows:...." Chapter 14 is not thereafter specifically designated as being applicable to fraternal benefit societies. Therefore, because no section in chapter 34 deals with arbitration provisions, and because § 27-14-22 is not applicable to insurance certificates issued by fraternal benefit societies, there is no evidence that the legislature has specifically undertaken to regulate arbitration provisions in insurance certificates issued by fraternal benefit societies. We hold, therefore, that the McCarran-Ferguson Act is not applicable under the facts of this case.[8]
When Harris purchased insurance from Woodmen, he agreed to be bound by all of the documents expressly incorporated into the certificate, specifically the Woodmen constitution and any amendments to that constitution. The certificate states that "[t]he Articles of Incorporation and the Constitution and laws and any amendments to them are binding on the member." The arbitration provision was duly adopted by an amendment of the kind that Harris agreed to be bound by when he joined Woodmen. Although Harris may not have expressly assented to the particular arbitration provision at issue here, it appears to be undisputed that he did assent to the plain terms of the certificate, which, at the time he entered into the contract with Woodmen, included a provision allowing for future amendments to the constitution.
The United States Supreme Court has held that arbitration provisions cannot be singled out and subjected to rules of construction that are different from, or *368 more stringent than, the rules of construction applied to contracts generally; therefore, general rules of contract interpretation apply to arbitration provisions. See Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564 (Ala.1999), citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); see, also, Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 108 (Ala. 1995), wherein this Court, quoting Perry v. Thomas, 482 U.S. 483, 493 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), noted: "`A court may not, ... in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.'"
This Court has long recognized that a contract may incorporate the terms of another document by reference. See McDougle v. Silvernell, 738 So.2d 806 (Ala.1999). Section 27-34-29(a) specifically requires that insurance certificates issued by fraternal benefit societies state that a number of documents, including the society's constitution and bylaws, are incorporated into the certificate. See, also, Modern Order of Praetorians v. Childs, 214 Ala. 403, 108 So. 23 (1926) (noting that a fraternal benefit society is authorized to incorporate the society's constitution by reference). As noted, Harris's certificate incorporated several documents, including Woodmen's constitution, "and any amendments to them." Contract interpretation is guided by the intent of the parties, which, absent ambiguity, is evidenced by the plain language of the contract. Allied-Bruce Terminix Cos. v. Dobson, supra. The language of Harris's certificate is not ambiguous; it incorporates "any" amendment to the Woodmen constitution. Whether Harris did or did not sign any document containing an arbitration provision is not determinative of his obligation under the certificate. See Ex parte Rush, 730 So.2d 1175 (Ala.1999), in which this Court recently noted: "[T]he FAA requires only that there be a `written provision' in a `contract'; it does not specify that a party's assent to the terms of a contract containing an arbitration provision can be evidenced only by that party's signature." 730 So.2d at 1178. We conclude, therefore, that Harris is bound by the arbitration provision. See Sovereign Camp, W.O.W. v. Allen, 206 Ala. 41, 89 So. 58 (1921), Woodmen of the World v. Alford, 206 Ala. 18, 89 So. 528 (1920), and Fraternal Union of America v. Zeigler, 145 Ala. 287, 39 So. 751 (1905); these cases indicate that a member of a fraternal benefit society may generally contract to be bound by future, as well as existing, provisions in the society's constitution and bylaws, provided that the society does not undertake by amendment of its constitution and bylaws to materially alter or diminish the value of the contract and thereby violate the law of this state as to impairing the obligation of such contracts. See, also, Italian Soc. of Mut. Beneficence v. Vacarella, 27 Ala.App. 233, 170 So. 223 (1936).[9]
*369 Having determined that there is an enforceable arbitration agreement between Harris and Woodmen, we conclude that Harris's third and fourth argumentsthat enforcing the arbitration provision in the absence of an agreement to arbitrate would contravene the FAA and thereby violate his rights under § 11 and § 13 of the Alabama Constitution and the Fourteenth Amendment to the United States Constitutionare necessarily unavailing. Furthermore, because we base our determination on the express incorporating language of Harris's certificate, we need not reach the constitutional issues touching § 27-34-29, specifically whether the creation of an arbitration agreement by operation of § 27-34-29(c), after the accrual of a cause of action, would violate § 13 of the Alabama Constitution and thereby preclude application of the FAA, and, if it would not, whether the trial court's order violates the separation-of-powers doctrine set out in the Alabama Constitution.
We find Harris's sixth argument that § 27-34-29(c) prohibited Woodmen from amending its constitution so as to deny him the "benefit" of § 8-1-41(3) unpersuasive. The only "benefits" that § 27-34-29(c) could refer to are those enunciated in § 27-34-23 ("Benefits-Generally"):
"(a) A society authorized to do business in this state may provide for the payment of:
"(1) Death benefits in any form;
"(2) Endowment benefits;
"(3) Annuity benefits;
"(4) Temporary or permanent disability benefits as a result of disease or accident;
"(5) Hospital, medical or nursing benefits due to sickness or bodily infirmity or accident; and
"(6) Monument or tombstone benefits to the memory of deceased members not exceeding in any case the sum of $300.00.
"(b) Such benefits may be provided on the lives of members or, upon application of a member, on the lives of a member's family, including the member, the member's spouse and minor children, in the same or separate certificates."
Harris's seventh argumentthat the amendment's reference to "applicable law" is a reference to § 8-1-41(3)is equally unpersuasive. The only evidence in the record pertinent to the intent of the amendment in this respect is the affidavit of Mark D. Thiesen, vice president and general counsel of Woodmen. He states in part:
"Attached as Exhibit A is a letter from me to the State of Nebraska Department of Insurance, dated February 21, 1997, explaining the `applicable law' portion of Woodmen's alternative dispute resolution procedures and attaching an additional amendment to the constitution, which discusses the effective applicable law. The intended meaning of the language of the initial alternative dispute resolution provisions, and also the amendment attached hereto, was that if the applicable law, be that either the state law or the Federal Arbitration Act, allowed for final and binding arbitration, then the arbitration provision of the alternative dispute resolution procedure would be final and binding. However, if state law did not allow for binding and final predispute arbitration clauses, and the Federal Arbitration Act did not preempt that law, then the arbitration would be a pre-suit filing procedure which must be exhausted prior to filing a lawsuit. In states such as Alabama, where the Federal Arbitration Act preempted the state law prohibiting predispute arbitration agreements, it was our intention that *370 the arbitration provisions of the alternative dispute resolution procedure would be final and binding. This was made clear in my letter to the State of Nebraska Department of Insurance. The amendment referred to in this letter was indeed approved by the national convention during July, 1997, and also, as reflected in Exhibit B, approved by the State of Nebraska Department of Insurance."
See Fidelity Nat'l Title Ins. Co. of Tennessee v. Jericho Management, Inc., 722 So.2d 740 (Ala.1998).
For the foregoing reasons, the trial court's order denying Woodmen's motion to compel arbitration is reversed and the case is remanded.
REVERSED AND REMANDED.
HOOPER, C. J., and MADDOX, SEE, and BROWN, JJ., concur.
KENNEDY, COOK, and JOHNSTONE, JJ., dissent.
COOK, Justice (dissenting).
I respectfully dissent. The majority "hold[s] ... that the McCarran-Ferguson [Insurance Regulation] Act[, 15 U.S.C. § 1011, et seq. (the "Act"),] is not applicable under the facts of this case." 740 So.2d at 367. Section 1012(a) and (b) of the Act provide in pertinent part:
"[(a)] The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
"[(b)] No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance...."
The majority fails to consider Ala.Code 1975, § 27-34-45, or even to cite it, except in its footnote 8 responding to this dissent. That section is contained in the chapter regulating "fraternal benefit societies," such as Woodmen of the World Life Insurance Society ("Woodmen"). Section 27-34-45 provides in pertinent part:
"No person shall cause or permit to be made, issued or circulated in any form:
"(1) Any misrepresentation or false or misleading statement concerning the terms, benefits or advantages of any fraternal insurance contract now issued, or to be issued, in this state or the financial condition of any society;
". . . .
"(4) Any person who violates any provision of this section ... shall ... be liable for a civil penalty in the amount of three times the sum received by such violator as compensation or commission, which penalty an action may be maintained for and recovered by any person or society aggrieved for his, or its, own use and benefit in accordance with the provisions of civil practice."
(Emphasis added.)
This case clearly implicates the provisions of this section specifically "regulating the business of insurance." In other words, the Legislature specifically provided for "an action ... in accordance with the provisions of civil practice." Woodmen may not resort to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), to abate Harris's action. Otherwise stated, Woodmen may not specifically enforce the arbitration clause at issue in this case pursuant to the FAA.
Thus, the majority is simply begging the question when it says that "no section in chapter 34 deals with arbitration provisions." 740 So.2d at 367. Section 27-34-45 specifically provides a right of action for the wrongs outlined therein. For these reasons, I dissent.
KENNEDY and JOHNSTONE, JJ., concur.
NOTES
[1] Harris also sued Randy Jordan, alleging that Jordan had committed fraud in his capacity as a Woodmen agent. Although Jordan joined Woodmen's motion to compel arbitration, see Georgia Power Co. v. Partin, 727 So.2d 2 (Ala.1998); Ex parte Gray, 686 So.2d 250 (Ala.1996); he is not a party to this appeal.
[2] Fraternal benefit societies are chartered and licensed under state law and regulated by state insurance departments under laws and regulations specific to such organizations. Fraternal benefit societies are nonprofit organizations that by law generally 1) have a representative form of government, 2) have a system of local lodges; and 3) provide insurance and other benefits to their members. See § 27-34-1.
[3] The record does not contain a copy of Harris's certificate of benefits; however, there appears to be no dispute as to the existence of such a certificate or as to whether the certificate contains this standard language. In a document filed in the trial court, Harris stated:

"The applicable provision in Plaintiff's insurance policy states:
"`CONTRACT
"`The contract between the member and Woodmen consists of:
"`This certificate, including endorsements, additional applications, and amendments, if any.
"`The written application, a copy of which is attached to this certificate.
"`The Articles of Incorporation of Woodmen.
"`The Articles of Incorporation and the Constitution and laws and any amendments to them are binding on the member and the beneficiary but will not take away or reduce any of the benefits of this certificate.'"
See also Ex parte Hopper, 736 So.2d 529 (Ala.1999), which states that a "standard" Woodmen "certificate of insurance" provides that "`[t]he Articles of Incorporation and the Constitution and Laws and any amendments to them are binding on the member and the beneficiary, but will not take away or reduce any of the benefits of [the] certificate.'" 736 So.2d at 531.
[4] Section 27-34-29 provides in pertinent part:

"(a) Every society authorized to do business in this state shall issue to each benefit member a certificate specifying the amount of benefits provided thereby. The certificate, together with any riders or endorsements attached thereto, the charter or articles of incorporation, the constitution and laws of the society, the application for membership, and declaration of insurability, if any, signed by the applicant and all amendments to each thereof shall constitute the agreement, as of the date of issuance, between the society and the member, and the certificate shall so state. A copy of the application for membership and of the declaration of insurability, if any, shall be endorsed upon or attached to the certificate.
". . . .
"(c) Any changes, additions or amendments to the charter or articles of incorporation, constitution or laws duly made or enacted subsequent to the issuance of the certificate shall bind the member and the beneficiaries and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to, and were in force at the time of, the application for membership; except, that no change, addition or amendment shall destroy or diminish benefits which the society contracted to give the member as of the date of issuance."
[5] Section 8-1-41(3) provides that "[a]n agreement to submit a controversy to arbitration" cannot be specifically enforced.
[6] No evidence in the record indicates when Harris actually learned of the existence of the arbitration provision. Harris states in his brief that he did not learn about the provision until after he had filed his action. Section 27-34-17(c) provides:

"Within 90 days from the approval [of amendments] by the commissioner, all such amendments, or a synopsis thereof, shall be furnished by the society to all members either by mail or by publication in full in the official organ of the society. The affidavit of any officer of the society, or of anyone authorized by it to mail any amendments, or synopsis thereof, stating facts which show that same have been duly addressed and mailed, shall be prima facie evidence that such amendments, or synopsis thereof, have been furnished the addressee."
The record contains a certificate executed by James L. Mounce, Woodmen's secretary, stating that a summary of the amendments to the constitution and bylaws was printed in Woodmen's official journal, Woodmen magazine, in its January/February 1997 issue and that a copy was mailed to each member of Woodmen at his last known address. Because the secretary's statement is not in affidavit form, § 27-34-17(c) does not create a presumption that Harris received a copy of the magazine; however, the secretary's certificate is evidence, unrebutted in the record, that Harris was notified of the amendment approximately 9 or 10 months before he filed his action on October 30, 1997.
[7] See Couch on Insurance 3d § 2:5 (1998 cum. supp.), indicating that a state statute aimed at protecting or regulating, directly or indirectly, the relationship between an insurer and its insured is a law regulating the business of insurance; see, also, Henry L. Strickland, The Federal Arbitration Act's Interstate Commerce Requirement: What's Left for State Arbitration Law? 21 Hofstra L.Rev. 385, 447 (1992), stating that "[a]greements by insurance companies to arbitrate disputesespecially agreements with customers to arbitrate disputes relating to insurance coverage probably constitute `the business of insurance' within the meaning of the McCarran-Ferguson Act."
[8] We note Justice Cook's reference to § 27-34-45, which provides for, among other things, a "civil penalty in the amount of three times the sum received by [the] violator as compensation or commission." However, no part of § 27-34-45 is invalidated, impaired, or superseded by the FAA. The FAA preempts contrary state law and renders enforceable a predispute arbitration agreement in a contract evidencing a transaction involving interstate commerce. In this respect, the FAA is generally understood to invalidate, impair, and supersede § 8-1-41(3), which precludes the specific enforcement of arbitration agreements. By agreeing to arbitrate his disputes with Woodmen, Harris waived his statutory right to have a court assess a civil penalty against Woodmen based on allegations of fraud. The FAA merely provides a way by which Woodmen can enforce that agreement.

We further note that this opinion does not decide whether the McCarran-Ferguson Act applies in other contexts so as to preclude application of the FAA to insurance contracts involving entities other than fraternal benefit societies.
[9] We note that Part I of the lead opinion in Ex parte Hopper, supra, finding no valid agreement to arbitrate, is contrary to our holding in this case. However, only three Justices concurred in Part I of Hopper; therefore, Part I has no precedential value. We do point out that the rationale of Part I was as follows:

"Although the Hoppers' certificate of insurance did incorporate future amendments to the governing laws of the Society, a provision of this kind is not enough to put the Hoppers on notice that by signing their application for insurance they were agreeing to mandatory, binding arbitration. The Hoppers' agreement to allow the Society to make certain unilateral changes to their insurance agreement does not provide the clear and unmistakable evidence required to show that the Hoppers voluntarily waived their constitutional rights to a judicial resolution."
736 So.2d at 532. By applying a heightened, "arbitration-specific," standard to the Hoppers' contract, Part I of the lead opinion is inconsistent with United States Supreme Court precedent holding that a court cannot construe an arbitration agreement in a manner different from that in which it construes nonarbitration agreements under state law. See, e.g., Doctors' Assocs., Inc. v. Casarotto, supra.