990 So.2d 858 (2008)
UNITED LAND CORPORATION
v.
DRUMMOND COMPANY, INC.
1061342.
Supreme Court of Alabama.
March 7, 2008.
*859 Hobart A. McWhorter, Jr., John D. Watson III, R. Thomas Warburton, and John C. Neiman, Jr., of Bradley Arant Rose & White, LLP, Birmingham; and William J. Donald of Donald, Randall & Donald, Tuscaloosa, for appellant.
William Anthony Davis III and Philip G. Piggott of Starnes & Atchison, LLP, Birmingham; and Wilbor J. Hust, Jr., of Zeanah, *860 Hust, Summerford & Williamson, L.L.C., Tuscaloosa, for appellee.
LYONS, Justice.
United Land Corporation appeals from a summary judgment in favor of Drummond Company, Inc., in an action arising from a dispute concerning leases entered into by United's and Drummond's predecessors in interest granting Drummond's predecessor in interest the right to strip-mine coal from property owned by United. We affirm.

I. Facts and Procedural History

This is the second time this case has been before this Court. For a full discussion of the factual and procedural history underlying this dispute, see our opinion in Drummond Co. v. Walter Industries, Inc., 962 So.2d 753 (Ala.2006) ("Drummond I"). In Drummond I, this Court affirmed in part and reversed in part the judgment of the trial court and remanded the case for further proceedings regarding United's breach-of-contract and fraud counterclaims against Drummond. The trial court's subsequent summary judgment in favor of Drummond on United's counterclaims is the basis of this second appeal. We will hereinafter discuss the facts and procedural history only as necessary for our discussion of the issues presented on this appeal.
The predecessors of United and Drummond entered into three strip-mining leases for properties owned by United; these leases are referred to as the Beltona lease, the Kellerman lease, and the Flat Top lease. The leases were executed in the late 1960s and early 1970s, and expired according to their express terms by the mid-1980s. In Drummond I, this Court agreed with the trial court's finding that after these leases expired "Drummond, with United's consent, remained on United's properties, [and] the relationship between Drummond and United became a tenancy at will." 962 So.2d at 773, 778.
Each lease granted Drummond the right to strip-mine coal from property covered by the particular lease; in exchange, Drummond was to pay royalties to United for each ton of coal removed from the property. In strip-mining, coal is recovered by removing rock and debris, also known as "overburden," from the surface. This process exposes a seam of coal, which is then removed. United alleged that Drummond breached the leases by failing to mine and remove all the economically recoverable coal from the properties as it says Drummond was obliged to do under the leases. United also alleged that Drummond affirmatively misrepresented that it had recovered all the economically recoverable coal on the properties.
Paragraph 1 of each lease contains substantially similar language regarding Drummond's mining obligations. Paragraph 1 of the Flat Top lease provides:
"1. The lessee is hereby authorized to take possession of the Pratt (upper and lower) and American seams of coal in, on and under the said lands on and after the first day of the term covered by this Agreement. Lessee shall begin the mining of coal hereunder as soon as practicable after the beginning of said term, and shall continue such mining with promptness and diligence during the term covered hereby, and the lessee agrees to mine and remove all coal in said seams in, on and under said lands which can be economically recovered by generally accepted methods of strip mining subject to the following conditions:
"(a) Lessee shall mine said coal in accordance with the best practice so that there will be no needless loss or waste and to the satisfaction of Lessor;

*861 "(b) Lessee shall undertake to recover all mineable coal as follows: (To a recoverable depth up to seventy-five feet above the Pratt Upper Seam,) provided that Lessee shall not be obligated to mine in areas where by reason of terrain or inherent nature or conditions of the strata the removal of the coal is not practicable;
"(c) In general, Lessee shall mine all mineable coal that [a] prudent owner would mine if he were conducting his own operation."
The difference in the three leases is found in subparagraph 1(b). In the Beltona lease, subparagraph 1(b) states:
"Lessee shall undertake to recover all mineable coal in Jefferson and Black Creek Seams where the overburden does not exceed 150 feet over the Black Creek Seam, provided that Lessee shall not be obligated to mine in areas where by reason of terrain or inherent nature or conditions of the strata the removal of the coal is not practicable."
In the Kellerman lease, subparagraph 1(b) states:
"Lessee shall undertake to recover all mineable coal as follows: Where the overburden does not exceed eighty (80) feet, provided that Lessee shall not be obligated to mine in areas where by reason of terrain or inherent nature or conditions of the strata the removal of the coal is not economical or practicable."
Regarding the payment of royalties to United, paragraph 7 of each lease states: "Lessee's obligations to pay minimum royalties shall cease and be of no effect if and when all recoverable coal agreed to be mined by Lessee from said lands shall have been mined and removed therefrom." Paragraph 9 of each lease further states:
"If the Lessee should fail to mine all mineable coal in accordance with Paragraph 1(a), 1(b), and 1(c) above prior to the termination of this lease or any extension thereof, the engineers of Lessor shall estimate the quantity of such mineable coal and the Lessee shall pay the Lessor royalty at the actual royalty rate provided in this contract for coal to be mined...."
Paragraph 12 of each lease states:
"The Lessor and its engineers and agents and attorneys shall have the right and privilege at all times of entering upon, examining and surveying said mines and lands and inspecting, examining and verifying all books, accounts, statements, sales, maps and plans of the Lessee for the purpose of ascertaining the amount of coal taken from said lands, and the manner in which the mining operations of the Lessee are being conducted thereon. Lessee agrees, that upon notice from Lessor in writing requesting it so to do, it will furnish to Lessor, within sixty (60) days from date of the notice, and every six (6) months thereafter, during the term of this lease, a survey and map showing, in plat, the extent and progress of all stripping operations and the thickness of coal at reasonable intervals, said survey and map to be prepared and certified by a Registered Engineer."
As set forth in Drummond I, the trial court, in the proceedings that led to the first appeal, disposed of United's breach-of-contract counterclaim against Drummond as follows:
"`The next consideration is defendant United Land Company's counterclaim. Count 1 claims breach of contract as to the Beltona, Kellerman, and Flat Top leases. These leases having all expired in the 1980's, and [Drummond] having mined under a tenancy at will subsequently *862 to the expiration of said leases, [Drummond] is entitled to judgment as a matter of law on count one (1).'"
962 So.2d at 768. This Court then reversed the judgment of the trial court, stating:
"United next argues that the trial court erred in dismissing its counterclaims alleging breach of the Beltona, Kellerman, and Flat Top leases. On appeal, United argues that `[a]s a tenant at will ... Drummond should have continued to bear the obligations that it bore under the expired leases from which those tenancies emanated.' (United's brief at 68.)
"We must agree with United. If Drummond's right to remain on United's properties was governed by the terms of the expired leases, and we have held that it was, Drummond's obligations to United also continued to be governed by the terms of those expired leases. Whether the parties' agreements created formal lease agreements or tenancies at will, their relationship was governed by the terms stated in the four original leases.[1]
"Therefore, United should have been allowed to proceed with its claims that Drummond breached the terms of those leases, including, among others, that Drummond failed to pay minimum royalties (if required under the terms of the expired leases); that Drummond failed to continuously mine (if required under the terms of the expired leases); and that Drummond failed to provide documentation of its mining plans (if required under the terms of the expired leases). We express no opinion on the merits of United's breach-of-contract claim; we simply conclude that the trial court improperly dismissed this claim.
"The trial court erred in dismissing United's claim for breach of the tenancy at will. We reverse this aspect of the trial court's summary judgment and remand the case for further proceedings as to that aspect consistent with this opinion."
Drummond I, 962 So.2d at 786.
In proceedings that led to the first appeal, the trial court also disposed of United's counterclaim against Drummond alleging fraud on three theories. First, the trial court held that the rights under the earlier leases had expired by the time the alleged misrepresentations were made. In Drummond I, this Court could not reconcile this conclusion with the trial court's finding of the existence of a tenancy at will, a conclusion this Court upheld. 962 So.2d at 787. This Court also noted that the trial court offered, as reasons to dispose of the fraud claim, the alternative theories of insufficient pleading of fraud and inconsistency of allegations in the complaint. 962 So.2d at 788. This Court affirmed the judgment of the trial court insofar as it held that the pleading of fraud as to the Beltona and Kellerman leases was insufficient, but we reversed its judgment as to the Flat Top lease. 962 So.2d at 788-89. Lastly, this Court in Drummond I also rejected the trial court's alternative holding that United's allegations regarding the Flat Top lease were inconsistent. 962 So.2d at 788.
This Court, in Drummond I, then concluded:
"The elements of a fraud claim are (1) a false representation, (2) of a material existing fact, (3) reasonably relied on by the claimant (4) who suffered damage as *863 a proximate consequence of the misrepresentation. Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143 (Ala.2003). United established evidence tending to show that Drummond represented that it had mined all the strippable coal from the Flat Top property; that Drummond's representation was false; that United relied on that representation; and that United sustained damages as a result of its reliance. The record contains evidence to indicate both that Drummond did, and did not, mine all the strippable coal from the Flat Top property. Thus, a factual dispute as to this issue has been presented. Accordingly, as to the Flat Top property, the trial court improperly entered a judgment in favor of Drummond.
"We conclude that in Count II of its counterclaim United failed to plead its fraud claim with sufficient specificity as to the Beltona and Kellerman leases, and we affirm this aspect of the trial court's summary judgment entered on Count II of United's counterclaim. As to United's allegations in Count II regarding the Flat Top property, the trial court improperly entered a summary judgment in favor of Drummond. We reverse this aspect of the summary judgment."
Drummond I, 962 So.2d at 788-89.
Drummond then filed an application for rehearing. Relevant to this second appeal, Drummond's application for rehearing asserted that this Court improperly reversed the summary judgment entered by the trial court on United's fraud counterclaim with respect to the Flat Top lease. Drummond argued that there is no evidence, much less substantial evidence, supporting United's fraud counterclaim. This Court overruled Drummond's application for rehearing on February 16, 2007.
On remand, the parties did not conduct additional discovery. Drummond moved for a summary judgment challenging the sufficiency of the evidence on United's breach-of-contract counterclaim and fraud counterclaim (as to the Flat Top lease). On May 30, 2007, the trial court entered a summary judgment for Drummond on the fraud counterclaim, entered a partial summary judgment as to damages, and denied the summary-judgment motion as to United's breach-of-contract claim. With respect to the fraud claim, the trial court held:
"As to the fraud claim there are disputed facts, but considering the evidence most favorably to the [United], [Drummond] is entitled to summary judgment, because [United] cannot prove one element of the fraud claim. In order to recover on a fraud claim, the plaintiff must present substantial evidence that the defendant made a misrepresentation of a material fact. A fraud claim must be specifically plead[ed]. [United] claims that in a August 1999 letter from [Drummond] to [United], [Drummond] made a misrepresentation of material fact. The letter read in pertinent part, regarding the Flat Top Mine; `this inventory has been depleted.' [United] allege[s] that [Drummond] was representing that the word inventory was referring to coal reserves. The evidence is undisputed that in the coal mining industry, the word inventory refers to stockpiles of coal that have been mined. There is no evidence that the statement that `the inventory at the Flat Top Mine has been depleted' was not true. Therefore, [United] failed to present substantial admissible evidence that [Drummond] made a misrepresentation of a material fact, and summary judgment on the fraud claim is granted in favor of the defendant Drummond Company Inc., and against [United]."
*864 On the breach-of-contract claim, the trial court held:
"In construing the contracts, this court must give the generally accepted meaning to contract terms. There is a legal dispute as to the meaning of the terms contained in paragraph 1(a), (b), and (c) of the contract. Paragraphs 1(a) and (c), although not ambiguous, leave room for interpretation, because the paragraphs do not define the terms, `best practice,' and `all coal that a prudent owner would mine if he were conducting his own operations.' However paragraph 1(b) is not ambiguous and the depth listed in that paragraph is found to be the maximum depth that [Drummond] was required to mine.
"The only evidence presented on the issue of how deep [Drummond] mined, is the affidavit of J. Michael Tracy. His testimony was that [Drummond] mined to a depth greater than the depths required under the lease, be they minimum or maximum depths. This evidence is undisputed. Therefore, [Drummond] is entitled to partial summary judgment on the issues of damages under paragraph 9 of the leases, because [United] would have to prove that [Drummond] breached its obligations under paragraphs 1(a), (b), and (c) as a condition precedent to recovering these damages under paragraph 9.
"There are disputed facts, which prohibit summary judgment on the issue of whether or not [Drummond] mined all the economically recoverable coal. Therefore, summary judgment is denied on the breach of contract claim.
"This case will proceed to trial on [United's] breach of contract claim, with the recoverable damages limited to the clause of the leases providing for minimum royalties, should the jury find that [Drummond] failed to mine all economically recoverable coal."
Two days later on June 1, 2007, United moved for reconsideration of the summary-judgment order. On June 7, 2007, just seven days after it acknowledged, in the summary-judgment order, the existence of disputed issues of fact on the breach-of-contract claim, the trial court, without explanation, amended its previous order and entered a summary judgment in favor of Drummond as to all United's remaining claims. United then appealed to this Court.

II. Standard of Review

"The standard by which this Court will review a motion for summary judgment is well established:
"`The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12-21-12(d)[,] Ala.Code 1975. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
"`In our review of a summary judgment, we apply the same standard as *865 the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).'"
Payton v. Monsanto Co., 801 So.2d 829, 832-33 (Ala.2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999)).

III. Analysis

A. Breach-of-Contract Claim

In Drummond I, this Court stated: "We express no opinion on the merits of United's breach-of-contract claim; we simply conclude that the trial court improperly dismissed this claim." 962 So.2d at 786.
United argues that the trial court erred in again entering a summary judgment in favor of Drummond as to United's claim alleging that Drummond breached the leases. Paragraph 1 of each lease sets out Drummond's obligation to mine and remove all coal that can be economically recovered by generally accepted methods of strip-mining and is expressly subject to three subparagraphs, 1(a), 1(b), and 1(c). Subparagraph 1(b) of each lease sets out that Drummond must recover all mineable coal where the overburden does not exceed a depth specific to each property. We must determine whether subparagraph 1(b) of each lease establishes the minimum or maximum depth to which Drummond must mine. The trial court, as previously noted, held as follows:
"Paragraphs 1(a) and (c), although not ambiguous, leave room for interpretation, because the paragraphs do not define the terms, `best practice,' and `all coal that a prudent owner would mine if he were conducting his own operations.' However paragraph 1(b) is not ambiguous and the depth listed in that paragraph is found to be the maximum depth that [Drummond] was required to mine."
(Emphasis added.) The trial court further found that "[t]he only evidence presented on the issue of how deep [Drummond] mined, is the affidavit of J. Michael Tracy. His testimony was that [Drummond] mined to a depth greater than the depths required under the lease...." If Drummond has failed to mine and remove the coal it was required to mine and remove under the leases, United contends that Drummond is obligated to pay a royalty to United, notwithstanding that it failed to mine the coal. On the other hand, if subparagraph 1(b) expresses a minimum and if the evidence is undisputed that Drummond exceeded that minimum, then Drummond is entitled to a summary judgment.
First, United contends that contrary to the trial court's findings, subparagraph 1(b) of the leases is ambiguous and is more easily read as establishing the minimum amount of coal that Drummond was obligated to mine. United notes that "a contract must be construed as a whole and, whenever possible, effect must be given to all its parts." Land Title Co. of Alabama v. State ex rel. Porter, 292 Ala. 691, 698, 299 So.2d 289, 295 (1974). Thus, beginning with the main text of the lease, United argues that paragraph 1 broadly requires Drummond to mine and remove all economically recoverable coal and that subparagraphs 1(a), 1(b), and 1(c) then establish conditions, not limitations, on this obligation, which therefore constitute Drummond's minimum mining obligations.
United further asserts that subparagraphs 1(a) and 1(c) unambiguously establish conditions on Drummond's broad mining obligations, with subparagraph 1(a) *866 requiring Drummond to use the best mining practices and to minimize waste and subparagraph 1(c) requiring Drummond to mine as a prudent owner would. United argues that the conditions of subparagraphs 1(a) and 1(c) suggest a corresponding reading of 1(b) that imposes an additional condition, rather than a limitation, on Drummond's obligation. That condition, United says, required Drummond to, at a minimum, recover all mineable coal where the overburden does not exceed the specified depth; the maximum amount of coal Drummond would be required to recover would depend on future market conditions and costs of mining. United also contends that the leases are ambiguous because, it says, they are reasonably susceptible to a reading requiring United to show only that Drummond failed to mine all the economically recoverable coal. And because, United says, it produced evidence indicating that Drummond failed to mine all economically recoverable coal, United is entitled to a trial on the issue of Drummond's alleged breach of the leases.
Drummond agrees with United that paragraph 1 of the leases establishes a broad obligation to mine and to recover economically recoverable coal, but it argues that this obligation was expressly "subject to" limitations set out in subparagraphs 1(a), 1(b), and 1(c). Drummond notes this Court's recognition in Pardue v. Citizens Bank & Trust Co., 287 Ala. 50, 56, 247 So.2d 368, 372 (1971), of the construction of the words "subject to" by other courts, including our recognition that "[i]n Texaco, Inc. v. Piggott, D.C., 235 F.Supp. 458 [(S.D.Miss.1964)], aff'd 358 F.2d 723 (5th Cir.[1966]), it was held that the words `subject to' as used in a deed mean `subservient to' or `limited by' and are `words of qualification showing the grantor's intent not to grant an absolute title."' Thus, Drummond contends that the broad obligation in paragraph 1 was "limited" or "qualified" by the provisions in subparagraph 1(b) requiring Drummond to mine to specified depths.
Drummond therefore argues that the trial court's judgment should be affirmed because, it says, the evidence is undisputed that Drummond complied with its obligations under the plain language of the leases. Drummond notes that it is axiomatic that "[c]ontract interpretation is guided by the intent of the parties, which, absent ambiguity, is evidenced by the plain language of the contract." Woodmen of World Life Ins. Soc'y v. Harris, 740 So.2d 362, 368 (Ala.1999). Drummond asserts that it has presented undisputed evidence indicating that it mined all economically recoverable coal up to and exceeding the depths of the overburden specified in subparagraph 1(b) of each lease and that in doing so mined as if Drummond were a prudent owner mining its own property. Drummond further asserts that because, it says, United has presented no evidence indicating that Drummond did not comply with the leases, United has created a strained interpretation of the standard lease in order to argue that the leases are ambiguous.
It is undisputed that Drummond mined to the depths specified in subparagraph 1(b) of the three leases. United, in its brief to this Court, and consistent with its view that subparagraph 1(b) expresses only a minimum, states that "the evidence showed that Drummond had mined to the depth listed in Subparagraph 1(b)" and "Drummond mined and removed coal in amounts far exceeding those stipulated in Subparagraph 1(b)." United's brief at pp. 8 and 19, respectively.
We agree with the trial court that subparagraph 1(b) of each lease unambiguously specifies the maximum depth to which *867 Drummond was required to mine overburden under the terms of the lease. Paragraph 1 of each of the three leases states that Drummond "agrees to mine and remove all coal in said seams in, on and under said lands which can be economically recovered by generally accepted methods of strip mining subject to the following conditions...." (Emphasis added.) Thus, the generality of the foregoing statement is limited by the conditions of the subparagraphs, and subparagraph 1(b) is a condition on the obligation to mine economically recoverable coal.
Likewise, subparagraph 1(b) in each of the three leases begins with the phrase, "Lessee shall undertake to recover all mineable coal...." then identifies a specific site and depth of overburden, and adds the proviso, "provided that Lessee shall not be obligated to mine in areas where by reason of terrain or inherent nature or conditions of the strata the removal of the coal is not practicable." The expansive introductory language of subparagraph 1(b) in each of the leases ("all mineable coal") is narrowed by the subsequent description of the specific depth of overburden to be mined. The reference to "areas" in the proviso must be reasonably read as the geographical area described within the subparagraph. Also, subparagraphs 1(a) and 1(c), dealing with the Drummond's obligation to use the "best practice" and to deal with the property as would a prudent owner mining coal for his own account, respectively, are conditions that harmonize rather than conflict with the limit established in subparagraph 1(b) of each lease.
United's contention that accepting Drummond's interpretationthat subparagraph 1(b) establishes a maximummeans that Drummond violated the lease by mining to depths in excess of the depths set in subparagraph 1(b) overlooks the unusual culture of laxity in the relationships between these parties as they over the years acquiesced in conduct inconsistent with the express terms of the leases. As this Court addressed in detail in Drummond I, these leases were entered into in the late 1960s and early 1970s, yet the parties continued to operate under them long after the stated expiration date of the initial terms of each lease. Drummond simply continued mining over the years.
United had the right pursuant to paragraph 12 of the leases to enter upon the mines and lands "for the purpose of ascertaining the amount of coal taken from said lands, and the manner in which the mining operations of the Lessee are being conducted thereon" and, on request, to obtain "a survey and a map showing, in plat, the extent and progress of all stripping operations and the thickness of coal at reasonable intervals." United and its predecessors in fact audited Drummond's books and records. Nevertheless, United repeatedly accepted royalty payments from Drummond over the years without question as to the extent to which the location of the coal that made the basis of the royalty payment exceeded the area described in subparagraph 1(b). That such construction of subparagraph 1(b) places Drummond in default of the terms of the lease by mining too much coal does not, under the circumstances here presented, justify disregard of the clear import of subparagraph 1(b). Accordingly, we conclude that subparagraph 1(b) in each of the three leases stipulates the maximum depth to which Drummond must mine economically recoverable coal. Because there is undisputed evidence that Drummond mined to the depths specified in each of the three leases, the trial court properly entered a summary judgment in favor of Drummond on United's breach-of-contract *868 counterclaim.[2]

B. Fraud Claim

United argues that the trial court erred in two respects by again entering summary judgment in favor of Drummond on United's fraud counterclaim. First, United asserts that the trial court violated the law-of-the-case doctrine by reentering a summary judgment on that counterclaim. Second, United asserts that the record contains substantial evidence indicating that Drummond's statement regarding the "inventory" of coal at the property covered by the Flat Top lease was fraudulent.
United argues that this Court's decision in Drummond I established that United is entitled to a jury trial on its fraud counterclaim and that the trial court violated the law-of-the-case doctrine by entering a summary judgment on United's fraud counterclaim instead of allowing that counterclaim to be heard by a jury. See Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989) ("Gray II") ("on remand the issues decided by an appellate court become the `law of the case,' and ... the trial court must comply with the appellate court's mandate"). United specifically looks to this Court's statements, in Drummond I, that "United established evidence tending to show that Drummond represented that it had mined all the strippable coal from the Flat Top property" and "that Drummond's representation was false." 962 So.2d at 788. Accordingly, United contends that the trial court's entry of a summary judgment on remand based on its finding that United failed to present substantial evidence indicating that Drummond misrepresented a material fact contradicts this Court's holding in Drummond I and therefore violates the law-of-the-case doctrine.
Drummond responds by arguing that the law-of-the-case doctrine is inapplicable here. Drummond states first that it has difficulty imagining anything more undermining to the judicial system than allowing nonmeritorious claims to proceed to a trial before a jury. Arguing that United's reliance on the law-of-the-case doctrine is misplaced, Drummond notes this Court's statement in Gray II, 553 So.2d at 81, that "[w]hile we are bound to carry out the holding as to the precise question before the Court on the first appeal, we are not necessarily bound to carry out literally the dicta pertaining to questions that were not then presented." (Emphasis added.) Drummond essentially contends that this Court's holding, in Drummond I, that evidence existed tending to show that Drummond had misrepresented a material fact to United was merely dicta. See Gray II, 553 So.2d at 81.
In Gray v. Reynolds, 514 So.2d 973, 975-76 (Ala.1987) ("Gray I"), a breach-of-contract action, the trial court held that an enforceable contract did not exist between the parties. In Gray I, this Court held that an enforceable contract did exist between the parties and noted that the defendant had breached the contract. 514 So.2d at 975-76. As set forth in Gray II, on remand the trial court held that the defendant was not liable for breach of contract "because [the plaintiff] had failed to act in good faith and to make efforts to mitigate his damages," and the plaintiff again appealed. 553 So.2d at 81. This Court held that the second appeal was not barred by the law-of-the-case doctrine because, on the first appeal, the holding of this Court did not go to the ultimate issueliability for breach of the contract. Gray II, 553 So.2d at 81.
*869 Drummond contends that this Court did not reach the merits of United's fraud counterclaim in Drummond I, because, it says, the trial court in proceedings that led to the first appeal held only that the fraud counterclaim was insufficiently pleaded and did not render a decision on the merits of that claim. Drummond notes that this Court has held that an "appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court records presenting that argument to the trial court before or at the time of submission of the motion for summary judgment." Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000). Therefore, Drummond asserts that this Court's holding in Drummond I on the issue whether the fraud counterclaim was sufficiently pleaded is the only holding that constitutes law of the case.
In response to Drummond's argument that United's reliance on the law-of-the-case doctrine is misplaced, United asserts that this Court's conclusions on the sufficiency of the evidence supporting the fraud counterclaim are an operative portion of the opinion in Drummond I and are not merely dicta. United argues that this Court's statements in Drummond I as to the merits of the fraud counterclaim were necessary to this Court's decision because if the record had lacked evidence tending to show fraud, this Court could have affirmed the trial court's judgment on that ground. Last, United asserts that the record of the first appeal showed and Drummond's application for rehearing argued that the evidence is undisputed that the term "inventory" as used in the coal-mining industry refers to stockpiles of coal that have already been mined.
In Drummond I this Court stated:
"The elements of a fraud claim are (1) a false representation, (2) of a material existing fact, (3) reasonably relied on by the claimant (4) who suffered damage as a proximate consequence of the misrepresentation. Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143 (Ala.2003). United established evidence tending to show that Drummond represented that it had mined all the strippable coal from the Flat Top property; that Drummond's representation was false; that United relied on that representation; and that United sustained damages as a result of its reliance. The record contains evidence to indicate both that Drummond did, and did not, mine all the strippable coal from the Flat Top property. Thus, a factual dispute as to this issue has been presented. Accordingly, as to the Flat Top property, the trial court improperly entered a judgment in favor of Drummond."
962 So.2d at 788. This conclusion must be read in context with what this Court held as to the breach-of-contract counterclaim in Drummond I. As we previously noted, this Court held:
"Therefore, United should have been allowed to proceed with its claims that Drummond breached the terms of those leases, including, among others, that Drummond failed to pay minimum royalties (if required under the terms of the expired leases); that Drummond failed to continuously mine (if required under the terms of the expired leases); and that Drummond failed to provide documentation of its mining plans (if required under the terms of the expired leases)."
962 So.2d at 786 (emphasis added). Continuing, we stated: "We express no opinion on the merits of United's breach-of-contract claim; we simply conclude that the trial court improperly dismissed this claim." 962 So.2d at 786.
*870 Our previous findings in Drummond I as to the fraud counterclaim therefore of necessity depended on the existence of contractual rights that made any alleged misrepresentation material. As we noted in Drummond I, "[t]he elements of a fraud claim are (1) a false representation, (2) of a material existing fact...." 962 So.2d at 788. Because we have concluded that Drummond is entitled to a summary judgment on the breach-of-contract claim, any misrepresentation as to the absence of "strippable coal" from the property covered by the Flat Top lease at sites of necessity beyond the area described in subparagraph 1(b) is drained of its materiality.[3] The law-of-the-case doctrine does not apply in a setting where, as here, the holding is necessarily contingent on resolution of other issues in the case.[4] The trial court properly entered a summary judgment in favor of Drummond on United's fraud counterclaim.

IV. Conclusion

We affirm the trial court's summary judgment in favor of Drummond on United's breach-of-contract and fraud counterclaims.
AFFIRMED.
COBB, C.J., and SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in part and concurs in the result.
MURDOCK, Justice (concurring in part and concurring in the result).
Both parties refer to the issue before us as whether paragraph 1(b) of the leases describes a "minimum" or a "maximum" mining requirement. To couch the issue in this manner (and particularly to discuss paragraph 1(b) in terms of the depth to which Drummond must mine) is confusing, at least to this judge. I believe this confusion results from the parties' failure to recognize, or at least to clearly articulate, that, properly read, paragraph 1(b) describes both the minimum and the maximum area where Drummond was required to mine. That is, insofar as what was required of Drummond under the leases, paragraph 1(b) defines the areaspecifically, the area on a horizontal plane beneath which Drummond was required to mine all coal (subject of course to the qualification of economic recoverability and the other qualifications stated in paragraph 1).
It is true that paragraph 1(b) of each lease does contain a numerical, vertical measurement. As the main opinion points out, however, it is a vertical measurement of overburden, not coal. The effect of using this measurement is to guide the parties horizontally to the areas where Drummond was required to mine. It could have done so through the use of a metes-and-bounds description applicable to the surface of the property or by means of *871 an outline drawn on a surface map. Instead, paragraph 1(b) simply explains that Drummond is required to mine in those areas where the distance between the surface of the land and the top of the coal seam is less than a certain measurement.
What the leases do not do, at least not with a numerical measurement, is specify how deeply Drummond must mine within the specified area once it reaches the top of the coal seam. Instead, the leases provided that, in the areas where the overburden is not greater than the specified amount, Drummond is to mine all coal found within the identified seams that (a) is economically recoverable, (b) subject to the "best practices" and "prudent owner" standards found in paragraphs 1(a) and 1(c), respectively. On the record before us, there is no genuine issue of fact but that Drummond did this; therefore, summary judgment in its favor was appropriate as to any claim alleging that it failed to mine enough coal.
Consistent with the foregoing, paragraph 1(b) also does not prescribe a numerically measured depth, within each coal seam, beneath which Drummond was not permitted to mine. (Nor do the leases prescribe a horizontal dimension, other than the horizontal dimensions of the coal seam itself, beyond which Drummond was not permitted to mine.) It is for this reason that Drummond also was entitled to a summary judgment as to any claims that it exceeded some alleged limitation on the coal it could mine under the leases.
As to United's fraud claim, I fully concur in the well-reasoned analysis provided by the main opinion. In so doing, I wish to emphasize that that analysis does not involve an acceptance of the definition of "inventory" that was accepted by the trial court or an acceptance of the trial court's view of the undisputed nature of the evidence supporting that definition.
NOTES
[1] A fourth lease, the Cluster Springs lease, was addressed in Drummond I. However, United's breach-of-contract and fraud counterclaims involved only the Beltona, Kellerman, and Flat Top leases. See Drummond I, 962 So.2d at 764.
[2] Our disposition of the breach-of-contract counterclaim renders moot the controversy over the proper interpretation of paragraph 9 of the leases.
[3] The absence of materiality makes it unnecessary to address United's assertion that the record contains substantial evidence indicating that Drummond's statement regarding the "inventory" at the property covered by the Flat Top lease was fraudulent.
[4] Because we do not deem it necessary to revisit our earlier holding on the premise that it was wrongly decided, we need not deal with the effect of § 12-2-13, Ala.Code 1975 ("The Supreme Court, in deciding each case when there is a conflict between its existing opinion and any former ruling in the case, must be governed by what, in its opinion, at that time is law, without any regard to such former ruling on the law by it; but the right of third persons, acquired on the faith of the former ruling, shall not be defeated or interfered with by or on account of any subsequent ruling.").